## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

| | |
|---|---|
| CALUMET SHREVEPORT REFINING, LLC, PLACID REFINING COMPANY LLC, AND ERGON REFINING, INC., | Case No. 22-60266 |
| Petitioners, | |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | |
| Respondent. | |

## RESPONSE TO EPA'S MOTION TO TRANSFER
## TO THE D.C. CIRCUIT

Petitioners Calumet Shreveport Refining LLC, Placid Refining Company LLC, and Ergon Refining, Inc. each petitioned EPA for hardship relief from the Renewable Fuel Standard ("RFS") based on the individual circumstances of their small refineries in Shreveport, Louisiana (Calumet), Port Allen, Louisiana (Placid), and Vicksburg, Mississippi (Ergon). EPA denied each hardship petition, and those denials for each small refinery are properly reviewed in the corresponding regional circuit—the Fifth Circuit. This Court *sua sponte* consolidated each petition for review, but they represent challenges to individual hardship determinations.

EPA prefers review in the D.C. Circuit and argues that each individual denial somehow constitutes an EPA action that is "nationally applicable" and based on a determination of "nationwide scope or effect." The Clean Air Act ("CAA") forbids what EPA is attempting.

EPA flagrantly violated the small refinery hardship provisions of the CAA in lumping together individual hardship petitions and evaluating them *en gross*. But whatever the merit (or lack thereof) of EPA's attempt to eliminate hardship relief program-wide, at the end of the day *individual* refinery decisions are required and were made. No amount of cosmetic packaging changes that. The small refineries in Shreveport, Port Allen, and Vicksburg are entitled to challenge EPA's adjudication of their individual hardship petitions in their regional circuit.

EPA's motion to transfer should be denied.[1]

---

[1] EPA provides no substantive argument for its suggestion that dismissal is appropriate and repeatedly acknowledges that the issue is venue (as opposed to jurisdiction). There is no jurisdictional issue here. *Texas v. EPA*, 829 F.3d 405, 418 (5th Cir. 2016) (holding that 42 U.S.C. § 7607(b)(1)'s "allocation of petitions between the regional circuits and the D.C. Circuit delineates the appropriate venue for challenges"); *Clean Water Action Council of Ne. Wisc., Inc. v. EPA*, 765 F.3d 749, 751 (7th Cir. 2014) (same); *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 879 (D.C. Cir. 2015) (same) (citing *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 590–91 (1980))). If the Court were to accept, for venue purposes, EPA's attempt to eliminate the individual character of small refinery hardship relief, then the proper course would be to transfer venue to the D.C. Circuit, not dismiss.

# BACKGROUND

## A.    The Renewable Fuel Standard Program and Small Refinery Hardship Relief

On an annual basis, EPA establishes renewable fuel standards, which represent what percentage of the transportation fuel must be blended with renewable fuels in a given year. 40 C.F.R. § 80.1405. Parties subject to the RFS, such as refiners that produce gasoline or diesel fuel, are obligated to ensure those volume targets are met each year. 42 U.S.C. § 7545(o)(3)(B)(ii)(I); 40 C.F.R. §§ 80.1406, 80.1407.

A party can comply with its obligation by blending renewable fuel into its gasoline and diesel and/or purchase credits on the secondary market representing renewable fuel blended by others. *See* 40 C.F.R. §§ 80.1405, 80.1407, 80.1427. But "Congress was concerned that escalating RFS obligations could work special burdens on small refineries that lack the inherent scale advantages of large refineries and sometimes supply a major source of jobs in rural communities." *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n (HollyFrontier)*, 141 S. Ct. 2172, 2175 (2021) (internal citation omitted). Congress created a "safety valve," *id.* at 2182, whereby a small refinery is entitled to relief from RFS compliance if it can demonstrate "disproportionate economic hardship," 42 U.S.C. § 7545(o)(9)(B)(i).[2]

---

[2] The Supreme Court's recent decision in *HollyFrontier* is the best judicial decision for background on the program and for understanding EPA's

A small refinery may petition EPA for hardship relief "at any time," *id.*, and EPA is obligated to grant or deny an individual refinery's petition "not later than 90 days after" receiving it, *id.* § 7545(o)(9)(B)(iii). EPA decides whether to grant a particular petition after "consult[ing]" with the U.S. Department of Energy ("DOE"). *Id.* § 7545(o)(9)(B)(ii).

For over a decade, EPA's (and DOE's) review of hardship petitions has required small refineries to submit a significant amount of highly sensitive, confidential information regarding the refinery, including information about its profitability, income, cash flow, margins, access to capital, costs of RFS compliance, blending capacity, and sales and distribution networks. DOE evaluates and scores each small refinery's petition individually and makes a recommendation concerning how EPA should rule on it. *See Lion Oil Co. v. EPA*, 792 F.3d 978, 980 (8th Cir. 2015); 42 U.S.C. § 7545(o)(9)(B)(ii).

After consulting with DOE, EPA decides each refinery's hardship petition. 42 U.S.C. § 7545(o)(9)(B)(ii). EPA's decision is refinery-specific; the agency must determine whether *that particular small refinery* would suffer "disproportionate economic hardship" if forced to comply with the RFS for the compliance year in question. If EPA grants an exemption, then *that particular small refinery* is relieved of its RFS obligation for the year. *Id.* § 7545(o)(9)(A)–(B).

---

now-repeated attempts to impermissibly take administrative action that ignores the statutory provisions on small refinery hardship relief.

## B.    Judicial review under the Clean Air Act

Judicial review of challenges under the CAA are governed by 42 U.S.C. § 7607(b)(1). It provides three rules for venue of judicial challenges to particular types of EPA action:

- **D.C. Circuit only.** Challenges to certain types of standards promulgated under enumerated CAA provisions may *only* be brought in the D.C. Circuit.

- **Regional Circuit only.** Other types of "action," including disapprovals and denials, which are "locally or regionally applicable may be filed *only* in the United States Court of Appeals for the appropriate circuit."

- **D.C. Circuit only where action of "nationwide scope and effect."** Notwithstanding the previous rule, "a petition for review of any action referred to in such sentence may be filed only in the [D.C. Circuit] if such action is based on a determination of nationwide scope or effect *and* if in taking such action the Administrator finds and publishes that such action is based on such a determination."

*Id.* (emphasis added). Section 7607(b)(1) is thus a "'two-fold provision' that is both 'a conferral of jurisdiction upon the courts of appeals'" generally, and a "requirement that 'delineates the appropriate venue for challenges.'" *State v. EPA*, 983 F.3d 826, 833 (5th Cir. 2020) (quoting *Texas v. EPA*, 829 F.3d 405, 418 (5th Cir. 2016)). Importantly, "[t]he court—not EPA—determines both the scope of an action's applicability and whether it was based on a determination of nationwide scope or effect." *Id.*

## C.    EPA's initial decisions on 2018 Hardship Petitions

Since the beginning of the RFS program, EPA has issued a separate decision document for each small refinery hardship petition. *See, e.g.*, *Ergon-W. Virginia, Inc. v. EPA* ("*Ergon II*"), 980 F.3d 403, 422 (4th Cir. 2020); *Renewable Fuels Ass'n v. EPA*, 948 F.3d 1206, 1214, 1226–30 (10th Cir. 2020), *rev'd*, *HollyFrontier*, 141 S. Ct. 2172 (2021), and *vacated*, 2021 WL 8269239 (10th Cir. Jul. 27, 2021); *Ergon-W. Virginia, Inc. v. EPA* (*Ergon I*), 896 F.3d 600, 608–09 (4th Cir. 2018); *Sinclair Wyoming Refin. Co. v. EPA*, 887 F.3d 986, 992 (10th Cir. 2017); *Lion Oil*, 792 F.3d at 980. Importantly, some petitions are approved, and some are not. And when decisions in the above-cited cases were challenged, EPA did not seek transfer to the D.C. Circuit. For the 2018 hardship decisions, however, EPA began taking a different tack.

Petitioners formally requested 2018 hardship relief in 2018. For example, Ergon's Vicksburg refinery requested relief on December 20, 2018. Email from Perkins Coie to EPA (Dec. 20, 2018) (confidential attachments omitted), attached as Exhibit A. EPA's statutory deadline to decide Ergon's petition was March 20, 2018. 42 U.S.C. § 7545(o)(9)(B)(iii).[3] EPA ignored that deadline. Instead, EPA waited to announce all the agency's

---

[3] Calumet's Shreveport, Louisiana refinery and Placid's Port Allen, Louisiana refineries sought hardship relief on October 2 and August 31, 2018, respectively. Thus, EPA's statutory deadlines to decide their petitions were December 31, 2018, and November 29, 2018, respectfully.

2018 hardship decisions on the same day, August 9, 2019—nearly five months late. EPA granted 31 petitions and denied 5.

Although all 36 decisions were announced on the same day, each small refinery received an individual determination based on the facts and circumstances unique to its individual refinery, *see, e.g.*, Email from B. Bunker (Aug. 9, 2019), attached as Exhibit B, and separately provided each refinery with DOE's evaluation and scoring of their individual petition, *see, e.g.*, Email from B. Bunker (Aug. 28, 2019) (confidential attachments omitted), attached as Exhibit C. Most 2018 petitions, like Petitioners', were granted. But EPA packaged all 36 decisions—grants and denials—into what it claimed was a single agency action by sending each refinery an unpublished, two-page agency memorandum that contained a high-level summary of how EPA decided the 2018 hardship petitions. Memorandum regarding Decision on 2018 Small Refinery Exemption Petitions (dated Aug. 9, 2019), attached as Exhibit D.

Based on that unpublished, agency memorandum, EPA represented that the individual denials were collectively a single, nationally applicable decision. *See, e.g.*, EPA's Memorandum Regarding Transfer, *Wynnewood Refin. Co., LLC v. EPA (Wynnewood)*, No. 19-9589 (10th Cir. Mar. 24, 2020). Because EPA unlawfully issued the 2018 hardship decisions late and represented that they were a single decision, biofuel industry groups were able to challenge EPA's unpublished memorandum in the D.C. Circuit as a vehicle for attempting to overturn *all* of EPA's grants of

2018 hardship relief. *Renewable Fuels Ass'n v. EPA*, No. 19-1220 (D.C. Cir.).

In contrast, individual small refineries that were denied relief or otherwise harmed by EPA's original 2018 hardship decisions petitioned for review in their regional circuits. *See, e.g.*, *Wynnewood*, No. 19-9589. EPA, changing position from its previous assent to regional circuit review, sought to stay or transfer all regional-circuit challenges in favor of the D.C. Circuit. *See, e.g.*, *id.*, EPA's Memorandum Regarding Transfer (Mar. 24, 2020).

### D. The Tenth Circuit's decision in *Renewable Fuels Association* and the Supreme Court's reversal.

In 2020, the Tenth Circuit ruled on a biofuel industry challenge to three 2016–2017 hardship grants, vacating and remanding them to the agency. *Renewable Fuels Ass'n*, 948 F.3d at 1258. As part of that decision, the court held that only small refineries that consistently received hardship relief from 2006 onward were eligible for relief in 2016 or 2017 (or any other year). *Id.* at 1245–49. Small refineries sought certiorari and the Supreme Court granted the writ on that eligibility question. *HollyFrontier*, 141 S. Ct. at 2176.

Shortly after the Court granted review, EPA changed its position on the merits. "With the recent change in administrations," *id.* at 2180, EPA sought to dramatically reduce the eligibility for small refinery hardship relief and decided to defend the Tenth Circuit's vacatur of EPA's own

grants of relief. The Supreme Court rejected EPA's gambit, reversed the Tenth Circuit, and ruled that Congress "expressly contemplate[d]" the existence of small refinery hardship relief in perpetuity. *Id.* at 2180–81.

Although the Supreme Court only reversed a portion of the Tenth Circuit opinion (the statutory question under review), the Tenth Circuit subsequently vacated its entire judgment and remanded to the agency. *Renewable Fuels Ass'n v. EPA*, No. 18-9533, 2021 WL 8269239, at *1 (10th Cir. July 27, 2021), *judgment entered*, 854 F. App'x 983 (10th Cir. 2021). Despite the Tenth Circuit's vacatur, EPA has repeatedly (and incorrectly) argued as though it is responding to and being directed by the Tenth Circuit's prior judgment.

### E.    D.C. Circuit abeyance and remand of 2018 hardship grants

After the Supreme Court granted certiorari in *HollyFrontier,* the D.C. Circuit held the 2018 challenges in abeyance before briefing was complete. *Renewable Fuels Ass'n*, No. 19-1220, Order Granting Abeyance (Feb. 17, 2021). The D.C. Circuit never addressed the venue question because, after the Supreme Court ruled against EPA in *HollyFrontier*, EPA asked the D.C. Circuit for a voluntary remand without vacatur of the 2018 decisions. Denials at 16. The D.C. Circuit granted that request. *Id.*

### F.    EPA's retroactive reversal of 2018 hardship relief

On remand, and years after initially granting 2018 hardship relief to each Petitioner, EPA reversed course, fundamentally transforming its

prior approach to evaluating small refinery hardship petitions. *See* April 2022 Denial of Petitions for RFS Small Refinery Exemptions ("Denials"), 87 Fed. Reg. 24300 (Apr. 25, 2022).[4] In particular, EPA elected to ignore the scoring matrix that DOE had used (and EPA had relied upon) to make its recommendations for nearly a decade, Denial at 23–24, and replaced it with a purported "economic theory," Denial at 30.

Based on this new approach, EPA denied the "36 pending petitions"—31 of which, including for the refineries in Shreveport, Port Allen, and Vicksburg, had previously been granted. Denials at 20. But once again, EPA attempted to package these individual "adjudications of 36 [hardship] petitions" into what it claims is a "single" nationally applicable action. Denials at 1, 71. Notwithstanding that packaging, EPA sent each small refinery separate "confidential, refinery-specific appendices." Denials at 29.

Alternatively, EPA asserts that, while these denials are locally or regionally applicable, they are based on determinations of nationwide scope or effect. Denials at 71–72. Either way, EPA claims that this action "must be filed" in the D.C. Circuit and moves to transfer or dismiss as a result. *See generally* Mot. to Transfer; *see also* Denial at 71–72. Because

---

[4] EPA published only the notice of Denials in the federal Register. The text of the Denials themselves can be found at https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1014EG4.pdf. Citations to the Denials reference the pagination of the document found at that website.

EPA asked, in the alternative, for this Court to dismiss these appeals, Petitioners took the precautionary step of filing protective petitions of review in the D.C. Circuit on July 24, 2022 (the statutory deadline to appeal). *Calumet Montana Refin., LLC, et al. v. EPA*, No. 22-1129 (D.C. Cir. June 24, 2022); *Ergon Refin., Inc. v. EPA*, No. 22-1131 (D.C. Cir. June 24, 2022); *Placid Refin. Co. LLC v. EPA*, No. 22-1134 (D.C. Cir. June 24, 2022).

## ARGUMENT

Petitioners have a clear legal right to challenge EPA's retroactive denials of their 2018 hardship petitions in each refinery's regional circuit. The Denials are, as a matter of law, locally or regionally applicable and must be based on individual, not national, determinations. To assert that somehow individual adjudications for refineries in Shreveport, Port Allen, and Vicksburg were "national," EPA violated the statute in multiple ways, from failure to meet the statutory 90-day deadline to failure to follow the individualized process of evaluation required by the CAA.

## I.   Historically, EPA has agreed that petitions by individual small refineries must be heard in regional circuits.

Prior to the initial 2018 decisions, EPA had always taken the position that venue is proper in the *regional* circuits, not the D.C. Circuit. Indeed, EPA has conceded as much. *Wynnewood*, No. 19-9589, EPA's Memorandum Regarding Transfer, at 10 ("[T]he Eighth Circuit was the proper venue for review of an EPA action denying an RFS hardship

exemption for a single Arkansas refinery because that action was locally applicable to the single refinery" (citing *Lion Oil*, 792 F.3d at 982)); *Ergon-W. Virginia, Inc. v. EPA*, Nos. 19-2128, 19-2148, 19-2152 (consol.) (4th Cir.), EPA's Resp. Br. at 2–3 (stating that the challenge to the denial of a hardship petition was "properly venued in" the Fourth Circuit "because the action is locally or regionally applicable").

Those statements were supported by EPA's long-established practice of *not* seeking transfer in hardship-petition cases filed in the regional circuits. *See, e.g.*, *Ergon II*, 980 F.3d at 422 (2020); *Renewable Fuels Ass'n*, 948 F.3d 1206 (2020); *Ergon I*, 896 F.3d 600 (2018); *Sinclair*, 887 F.3d 986 (2017); *Lion Oil Co.*, 792 F.3d 978 (2015). In fact, EPA is *currently* litigating the denial of a 2019 hardship petition in a regional circuit without challenging venue. *See United Refin. Co. v. EPA*, No. 21-3218 (3d Cir.).

Petitioners have thus filed where these challenges historically have been filed and where EPA historically has agreed is the proper venue. EPA has now apparently decided that it would prefer to be in the D.C. Circuit, and it has bundled various individual adjudications together in an omnibus decision announcement to that end. As explained below, this "transparent sleight of hand" should be rejected. *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 881 (D.C. Cir. 2015).

## II. EPA's illegal conduct does not change the nature of a hardship denial.

As already noted, EPA concedes that action on an individual hardship petition is locally or regionally applicable. Despite the inherently local and/or regional nature of hardship petitions, EPA argues that these 2018 denials are different. According to EPA, the Denials are a single national action because the reasoning is categorical and applies to refineries all over the country. Mot. at 11–15. But both the bundling of all hardship petitions together and applying EPA's purported categorical reasoning could only be achieved by violating the CAA.

**The illegal bundling**. Congress required EPA to decide Petitioners' 2018 petitions "not later than 90 days after" receiving them. 42 U.S.C. § 7545(o)(9)(B)(iii). Had it done so, it is undisputed that § 7607(b)(1) designates this Court as the proper venue for their challenge. *Wynnewood*, No. 19-9589, EPA's Memorandum Regarding Transfer, at 10; *Ergon-W. Virginia*, Nos. 19-2128, 19-2148, 19-2152 (consol.), EPA's Resp. Br. at 2–3. Instead, EPA did not issue those decisions until the statutory time period had lapsed nearly three times over so that it could bundle them with more than 30 other decisions. Absent that unlawful delay and bundling, biofuel industry challenges to Petitioners' original grants would have had to proceed one-by-one in regional circuits. Instead, EPA's unlawful delay resulted in all 36 individual determinations being remanded to the agency after *HollyFrontier*.

**The purported categorical reasoning**. When Congress provided for hardship relief for small refineries, it made clear that EPA would grant or deny relief to individual refineries based on determinations of refinery-specific hardship. 42 U.S.C. § 7545(o)(9)(A)(ii)(II), (o)(9)(B). The statute is clear: "*A* small refinery may at any time petition" for hardship relief "for the reasons of disproportionate economic hardship." *Id.* § 7545(o)(9)(B)(i) (emphasis added). And Congress instructed EPA to evaluate each petition to determine whether "*a* petition" demonstrates hardship. *Id.* § 7545(o)(9)(B)(ii) (emphasis added). Even in giving EPA a deadline for responding to petitions, Congress spoke in the singular: "not later than 90 days after *the* receipt of *the* petition." *Id.* § 7545(o)(9)(B)(iii) (emphasis added). Once filed, as EPA acknowledges, evaluation of a hardship petition must be based on "data, contracts, and other information" received "from small refineries" relevant to their *individual* hardship petitions. Denials at 25, 29. (And EPA tacitly acknowledged this when it sent each small refinery separate "confidential, refinery-specific appendices." Denials at 29.) In other words, the Denials are and must be individualized, or they are unlawful.

EPA stunningly admits that it disregarded the statute in adjudicating individual petitions, yet it asks this Court to reward its lawlessness with the forum of its choice:

> The April 2022 Denial Action **made no unique or individualized findings** as to the ability of any of the thirty-six petitioning refineries to recover the costs of RFS compliance, and EPA did not adjust its statutory interpretation and economic theory to the particulars of any specific small refinery, or the region in which a refinery operates. The April 2022 Denial Action is therefore nationally applicable.

Mot. at 13 (emphasis added).

EPA cannot change the statutorily mandated individual process—and the venue determinations that come with it—by disregarding its statutory obligations. The CAA requires EPA to consider whether an individual refinery suffers hardship. EPA, by its own admission, issued 36 denials of hardship petitions, Denials at 1; those necessarily must be individual.

Perhaps a bit self-conscious after admitting it broke the law, EPA tells this Court that it cannot look behind the curtain at "the validity of an action," but must limit its review to "the 'face' of" the Denials. Mot. at 11–12. This appears to be EPA's way of saying "just take our word for it." But Congress has empowered courts, not the agency, to determine "the scope of an action's applicability." *State*, 983 F.3d at 833. The D.C. Circuit likewise does not defer to EPA's determinations of "national applicability." *See Dalton Trucking*, 808 F.3d at 881. The Denials are locally and regionally applicable. The only "national" thing about them is that EPA packaged them in a single federal document (and even that is offset by EPA's distribution of individual, confidential appendices).

To be sure, in some circumstances courts have said that they "look only to the face" of the agency action to determine venue under § 7607(b)(1). *Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 456 (D.C. Cir. 2013). But those courts juxtapose "the face" of the agency action with the "practical effects" of that action. *Id.* Nothing in those opinions gives any indication that "looking to the face" of an action means turning a blind eye to EPA's illegal manipulation of the circumstances.

EPA does not provide any authority to support its position that this Court is prohibited from considering "the validity" of the denials. *See* Mot. at 12. Further, it cannot be Congress' intent to deprive Petitioners of venue in their regional circuits so long as EPA can argue that its illegality is not on "the face" of its action. But even if this Court were required to engage in such willful ignorance, that cannot extend to EPA's *admission* of not performing the individualized determinations required by the CAA. *See* Mot. at 14-15.

If, because of the nature of hardship denials, this Court believes that venue and the merits are too intertwined, Petitioners would not object to this motion being referred to the merits panel for a joint resolution of venue and the merits. EPA has previously acquiesced to the D.C. Circuit's handling transfer motions this way;[5] the agency will presumably remain consistent here.

---

[5] *See* Order, *Sinclair Wyoming Refin. Co. v. EPA*, No. 19-1196 (D.C. Cir. Mar. 3, 2020); EPA's Memorandum Regarding Transfer to the D.C.

## III.    This Court—not EPA—decides whether the Denials are based on a determination of nationwide scope or effect.

"Because the [Denials are] locally or regionally applicable action[s], the default presumption of § 7607(b)(1) requires review in this circuit." *Texas*, 829 F.3d at 424. To overcome that presumption, EPA must establish "two conditions" set out in the text of § 7607(b)(1). *Id.* at 421. EPA must establish that *both* the Denials are "based on a determination of nationwide scope or effect *and* . . . the Administrator f[ound] and publishe[d] that [the Denials are] based on such a determination." 42 U.S.C. § 7607(b)(1) (emphasis added); *see also Texas*, 829 F.3d at 421. Although EPA has satisfied the second condition, Denials at 71–72, "the first condition controls the role of the court," *Texas*, 829 F.3d at 421.

EPA's position improperly seeks to cut courts out of the venue analysis entirely. EPA claims it has "complete discretion," Denials at 71–72, and that this Court must "defer[] to EPA's determination of nationwide scope or effect." Mot. at 17. This Court has rejected EPA's position. Under § 7607(b)(1), the Court "must make an independent assessment of the scope of the determinations just as [this Court] make[s] an independent assessment of the applicability of the [Denials]." *Texas*, 829 F.3d at 421. EPA's only authority to the contrary is a nonprecedential per curium order that is not even binding on the D.C. Circuit, much less this Court. Mot. at 17–18 (citing *Alcoa, Inc. v. EPA*, No. 04-1189, 2004 WL 2713116

---

Circuit, *Wynnewood Refin. Co. v. EPA*, No. 19-9589, at 3 (10th Cir. Mar. 24, 2020) (citing Order, *Sinclair Wyoming Refin.*, No. 19-1196).

(D.C. Cir. Nov. 24, 2004)). The plain text of the statute and binding decisions of this Court disagree. *Texas*, 829 F.3d at 421; *cf. Dalton Trucking*, 808 F.3d at 881–82 (refusing to defer to EPA's published finding of national applicability).

Having lost under the statute's text, EPA retreats to policy arguments. Mot. at 17–20. EPA cautions that if this case does not proceed in the D.C. Circuit, "multiple circuits [will] review the merits of the methodology that EPA applied" and "reach different outcomes, a result that Congress sought to avoid," and EPA will "face the hardship of having to litigate the same merits arguments simultaneously in multiple cases in multiple circuits." Mot. at 16–17, 19.

What EPA is describing is precisely how hardship petitions have always been adjudicated, *see, e.g.*, *Ergon II*, 980 F.3d 403; *Renewable Fuels Ass'n*, 948 F.3d 1206; *Ergon I*, 896 F.3d 600; *Sinclair*, 887 F.3d 986; *Lion Oil Co.*, 792 F.3d 978, and how Congress intended for refinery-specific decisions to be reviewed, *see* 42 U.S.C. § 7545(o)(9)(A)(ii)(II), (o)(9)(B). Though EPA may prefer to make only one decision instead of 36, and litigate only one case in its preferred forum, that is not the statute Congress wrote. If Congress "sought to avoid" any result, it is the result that EPA seeks here: a procedural reward for the agency's refusal to follow the congressionally prescribed scheme for adjudicating individual hardship petitions.

EPA also contends that the Denials should be reviewed in the D.C. Circuit because "any arguments that Petitioners could make in this case would be inextricably intertwined with arguments applicable to all the other denials from other regions because they were based on the same rationale and methodology." Mot. at 16. Although there will likely be some overlap, Petitioners' chief objection to the Denials is EPA's mishandling of their individual circumstances in denying their petitions. After all, EPA's evaluation of a hardship petition is based on confidential "data, contracts, and other information" received "from small refineries" relevant to their individual hardship petitions. *See* Denials at 25, 29. Refinery-specific arguments based on refinery-specific facts are unlikely to overlap. Indeed, lumping all 36 small refineries into a single D.C. Circuit action would obscure their unique circumstances of hardship and could effectively deprive them of their day in court.

Admittedly, different circuits may reach different results as to different small refineries, but that is by design. The individualized nature of hardship petitions means that some small refiners may obtain relief, and others may not. To the extent these different outcomes are not due to refinery-specific facts, our legal system has provided a final national arbiter to resolve these disagreements in the Supreme Court. And that Court is more than capable of correcting EPA's mistakes in small refinery cases originating in regional circuits. *See HollyFrontier*, 141 S. Ct. 2172.

With EPA's deference arguments squared away, the question of venue has been resolved. EPA put all its eggs in the deference basket. *See* Mot. at 15–20. Besides the policy arguments supporting its demand for deference, EPA does not explain or offer any other argument for why this Court should conclude that the Denials were based on determinations of nationwide scope or effect. "Because we said so" is not enough for EPA to overcome § 7607(b)(1)'s presumption of review in this Court. *Texas*, 829 F.3d at 421, 424. EPA will undoubtedly attempt to rectify this in its reply, but any such argument is foreclosed. *Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015) ("Arguments raised for the first time in a reply brief are waived."). As EPA notes, this is a question of venue, and venue can be waived. *See City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004).

## CONCLUSION

For the reasons stated, EPA's motion should be denied.

Dated: July 5, 2022

Respectfully submitted,

*s/ Jonathan G. Hardin*

Jonathan G. Hardin
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6297
Facsimile: 202.654.6211
JHardin@perkinscoie.com

Karl J. Worsham
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85102-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
KWorsham@perkinscoie.com

Attorneys for Calumet Shreveport Refining, LLC, Placid Refining Company LLC, and Ergon Refining, Inc.

# CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,563 words, excluding the parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used for the word count).

Dated: July 5, 2022

*s/ Jonathan G. Hardin*
Jonathan G. Hardin
PERKINS COIE LLP

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: July 5, 2022

*s/ Jonathan G. Hardin*
Jonathan G. Hardin
PERKINS COIE LLP