REDACTED PUBLIC VERSION

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | |
|---|---|
| WYNNEWOOD REFINING CO. LLC; CALUMET SHREVEPORT REFINING, LLC; AND THE SAN ANTONIO REFINERY LLC,<br><br>                    Petitioners,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>                    Respondent. | No. 22-60425 (consolidated with Nos. 22-60433 & 22-60434) |

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case, to the best of counsel's knowledge.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.  Counsel gathered the information regarding Petitioners and related entities from Petitioners' Certificates of Interested Persons and has not independently verified the accuracy of those Certificates.

1.     Allegiance Refining, LLC, is a Texas limited liability company.  Allegiance Refining, LLC, is a refining operations company.  Allegiance Refining, LLC, is not publicly traded, and no publicly held company has a ten percent or

greater ownership interest in it.  Although Allegiance Refining, LLC, is identified in Petitioner The San Antonio Refinery LLC's Certificate of Interested Persons, the relationship between Allegiance Refining, LLC, and Petitioner The San Antonio Refinery LLC or its parent companies was not disclosed.

2.      Calumet Refining, LLC, a limited liability company formed under the laws of Delaware, is owned 100 percent by Calumet Specialty Products Partners, LP.  On November 10, 2019, Calumet Refining, LLC, completed the sale to Starlight Relativity Acquisition Company LLC of all of the issued and outstanding membership interests in Calumet San Antonio Refining, LLC, now named The San Antonio Refinery LLC, which is a Petitioner.

3.      Calumet Shreveport Refining, LLC—Petitioner—is incorporated under the laws of Delaware and owned 100 percent by Calumet Specialty Products Partners, LP.

4.      Calumet Specialty Products Partners, LP—parent of Petitioner Calumet Shreveport Refining, LLC—is incorporated under the laws of Delaware. Calumet Specialty Products Partners, LP, is a refiner of petroleum products and a publicly traded company.  The Heritage Group owns 12.28 percent of the common stock of Calumet Specialty Products Partners, LP, and there are no other known persons or entities that own more than ten percent of it.  Calumet Specialty Products Partners, LP, was also listed in Petitioner The San Antonio Refinery

**REDACTED PUBLIC VERSION**

LLC's Certificate of Interested Persons likely due to its 100 percent ownership of Calumet Refining, LLC.

5.     CVR Refining, LLC—parent of Petitioner Wynnewood Refining Co. LLC—is incorporated under the laws of the State of Delaware and is a wholly owned subsidiary of CVR Refining, LP.

6.     CVR Refining, LP, is incorporated under the laws of the State of Delaware and is an indirect wholly owned subsidiary of CVR Energy, Inc.

7.     CVR Energy, Inc., is incorporated under the laws of the State of Delaware and is publicly traded on the New York Stock Exchange under the symbol "CVI."

8.     Ergon, Inc. is the parent company of Petitioners Ergon Refining, Inc., and Ergon-West Virginia, Inc.

9.     Ergon Refining, Inc.—Petitioner— is incorporated under the laws of Mississippi and is a refiner of petroleum products.  Ergon Refining, Inc., is wholly owned by parent company Ergon, Inc.  No publicly held company has a ten percent or greater ownership interest in it.

10.     Ergon-West Virginia, Inc.—Petitioner— is incorporated under the laws of Mississippi and is a refiner of petroleum products.  Ergon-West Virginia, Inc., is wholly owned by parent company Ergon, Inc.  No publicly held company has a ten percent or greater ownership interest in it.

11.    Gershenfeld, Andrew K.—White & Case LLP—counsel for Petitioner Wynnewood Refining Co. LLC.

12.    Hardin, Jonathan G.—Perkins Coie LLP—counsel for Petitioners Calumet Shreveport Refining, LLC; Ergon Refining, Inc.; Ergon-West Virginia, Inc.; The San Antonio Refinery LLC; and Placid Refining Company LLC.

13.    Harrison, Bryan—Attorney, United States Department of Justice—counsel for Respondent United States Environmental Protection Agency.

14.    Hershey, Samuel P.—White & Case LLP—counsel for Petitioner Wynnewood Refining Co. LLC.

15.    Icahn Enterprises, LP, and its affiliates ("IEP") hold a ten percent or greater ownership interest in CVR Energy Inc.  IEP is a publicly traded partnership.

16.    Jacobi, Patrick R.—Attorney, United States Department of Justice—counsel for Respondent United States Environmental Protection Agency.

17.    Lauria, Thomas E.—White & Case LLP—counsel for Petitioner Wynnewood Refining Co. LLC.

18.    Morical, Gregory J.—Calumet Specialty Products Partners, LP—counsel for petitioner Calumet Shreveport Refining, LLC.

19.    Placid Holding Company—parent of Petitioner Placid Refining Company LLC.

20.    Placid Refining Company LLC—Petitioner—is a limited liability company organized under the laws of Delaware and is a refiner of petroleum products.  Placid Refining Company LLC is owned 100 percent by its parent companies Placid Holding Company and RR Refining, Inc., and no publicly held company has a ten percent or greater ownership interest in it.

21.    Pullins, Taylor—White & Case LLP—counsel for Petitioner Wynnewood Refining Co. LLC.  (No appearance entered as of this filing.)

22.    RR Refining, Inc.—parent of Petitioner Placid Refining Company LLC.

23.    The San Antonio Refinery LLC—Petitioner—is a Delaware limited liability company (f/k/a Calumet San Antonio Refining, LLC) and is a refiner of petroleum products.  The San Antonio Refinery LLC is owned 100 percent by Starlight Relativity Acquisition Company LLC.

24.    Starlight Relativity Acquisition Company LLC, is a Delaware limited liability company.  Starlight Relativity Acquisition Company LLC is a holding company based in the United States.  Starlight Relativity Acquisition Company LLC is owned 83.22 percent by Starlight Relativity Holdings LLC and 16.88 percent by TexStar Midstream, LLC, and is not publicly traded.

25.    United States Environmental Protection Agency—Respondent.

**REDACTED PUBLIC VERSION**

26.     Wolff, Eric B.—Perkins Coie LLP—counsel for Petitioners Calumet Shreveport Refining, LLC, and The San Antonio Refinery LLC.

27.     Worsham, Karl J.—Perkins Coie LLP—counsel for Petitioners Calumet Shreveport Refining, LLC; Ergon Refining, Inc.; Ergon-West Virginia, Inc.; The San Antonio Refinery LLC; and Placid Refining Company LLC.

28.     Wynnewood Refining Co. LLC—Petitioner—is incorporated under the laws of the State of Delaware and is a wholly owned subsidiary of CVR Refining, LLC.

Dated:  January 11, 2023                          s/ *Bryan J. Harrison*
                                                  BRYAN J. HARRISON

**REDACTED PUBLIC VERSION**

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | |
|---|---|
| WYNNEWOOD REFINING CO. LLC; CALUMET SHREVEPORT REFINING, LLC; AND THE SAN ANTONIO REFINERY LLC, <br><br>                          Petitioners, <br><br>     v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, <br><br>                   Respondent. | No. 22-60425 <br> (consolidated with Nos. 22-60433 & 22-60434) |

**EPA'S REDACTED RESPONSE TO THE SAN ANTONIO REFINERY'S MOTION FOR STAY PENDING APPEAL**

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................1

BACKGROUND ................................................................................2

    A.    The RFS Program and Temporary Small Refinery Exemption .............................................................2

    B.    EPA's Proposed Denial and June 2022 Denial Action...............4

ARGUMENT .....................................................................................5

    I.    THE MOTION SHOULD BE DENIED INSOFAR AS IT SEEKS RELIEF UNAVAILABLE IN A PETITION FOR REVIEW OF AGENCY ACTION ...................................5

    II.    TSAR HAS NOT MET ITS BURDEN FOR THE EXTRAORDINARY REMEDY OF A STAY PENDING APPEAL.....................................................................9

        A.    TSAR Demonstrates No Likelihood of Success on the Merits. .....................................................................10

            1.    EPA's June 2022 Denial Action is consistent with the CAA. .........................................................10

            2.    In the June 2022 Denial Action, EPA adjudicated individual petitions and considered refinery-specific facts consistent with the CAA..........................14

            3.    The June 2022 Denial Action did not violate TSAR's due process rights and is not retroactive. .........15

            4.    TSAR's failure to purchase RINs ratably does not invalidate EPA's conclusions on RIN discount and RIN cost passthrough.....................................17

            5.    The post-decisional GAO Report should not be considered and does not evidence likelihood of success on the merits. .....................................21

i

**REDACTED PUBLIC VERSION**

    B.    TSAR Has Not Shown That a Stay of EPA's June 2022
           Denial Action Is Necessary to Avert Irreparable Harm............22

    C.    The Requested Stay Is Not in the Public Interest. ....................23

CONCLUSION.........................................................................................24

CERTIFICATES OF COMPLIANCE.....................................................25

CERTIFICATE OF SERVICE ...............................................................26

# INTRODUCTION

Petitioner The San Antonio Refinery's ("TSAR") Motion for a "stay" of EPA's action seeks relief unavailable from *any* court, i.e., suspending TSAR's preexisting obligation to comply with the Renewable Fuel Standard ("RFS") program of the Clean Air Act ("CAA"). Not only has TSAR recognized in other courts that the relief sought through its stay motion is not available to it *on the merits* of its petition for review, but also the requested relief only could be obtained, if at all, through a writ of mandamus, for which TSAR has not petitioned, with prerequisites TSAR does not even purport to satisfy.

Insofar as TSAR seeks a stay of the decision under review—EPA's Denial of Petitions for RFS Small Refinery Exemption, EPA-420-R-22-011 ("June 2022 Denial Action")—TSAR is not entitled to that extraordinary relief or its request for a stay pending appeal. Even if this were the proper forum,[1] TSAR's stay motion should be denied for three principal reasons.

*First*, staying EPA's decision would not avert the irreparable harm TSAR alleges, which stems from legal duties that predate EPA's decision. *Second*, TSAR's arguments about harm, like its attacks on the merits of EPA's decision, are

---

[1] *See* EPA's Motion to Transfer Petition to D.C. Circuit or Dismiss Based on Improper Venue, Doc. 00516465312. While this Court has carried EPA's venue motion forward to the merits panel, Doc. 00516546773, the lack of venue for TSAR's petition for review also supports denial of TSAR's Motion.

not well founded.  *Third*, because EPA's decision applies equally to many

similarly-situated regulated entities, a stay applied only to TSAR would be

inequitable and contrary to public interest.  Simply put, the requested stay would

███████████████████████████████████████████████████

████████████████████████████████████████

████████.  The Motion should be denied.

# BACKGROUND

## A.    The RFS Program and Temporary Small Refinery Exemption

The RFS program was enacted in 2005 and 2007 to increase the production

of clean renewable fuels.  Energy Policy Act of 2005, Pub. L. No. 109-58, 119

Stat. 594; Energy Independence and Security Act of 2007, Pub. L. No. 110-140,

121 Stat. 1492.  Congress established increasing target volumes of renewable fuels

to be blended into transportation fuel each year until 2022, with EPA setting the

volumes thereafter.  42 U.S.C. § 7545(*o*)(2)(B).  Each year, EPA issues an annual

rule setting the "applicable volume" for each fuel type and converting those into

"percentage standards" that require certain obligated parties—namely, refiners and

importers of transportation fuel—to introduce renewable fuel into the

transportation fuel market.  *Id.* § 7545(*o*)(2)–(3); 40 C.F.R. § 80.1406.

Per Congress's design, refineries comply with the RFS by submitting to

EPA enough credits, known as Renewable Identification Numbers ("RINs"), that

correspond to particular quantities of renewable fuel. 40 C.F.R. §§ 80.1425–80.1427; *see* 42 U.S.C. § 7545(*o*)(5) (requiring EPA to promulgate regulations creating a credit system). A refinery can satisfy its RFS obligations either by blending the required quantity of renewable fuels into gasoline and diesel or by purchasing a sufficient number of RINs from other entities that blend renewable fuels. *See* 40 C.F.R. §§ 80.1427–80.1429.

Congress created a temporary exemption from the RFS program for certain obligated parties that qualify as "small refineries." 42 U.S.C. § 7545(*o*)(9). Congress provided that a "small refinery may at any time petition the Administrator [of EPA] for an extension of the exemption under subparagraph (A) for the reason of disproportionate economic hardship." *Id*. § 7545(*o*)(9)(B)(i). In considering such a petition, "the Administrator, in consultation with the Secretary of Energy, shall consider the findings of the study under subparagraph (A)(ii) and other economic factors." *Id*. § 7545(*o*)(9)(B)(ii). A petitioning small refinery has various options to manage its potential compliance obligations, depending on the timing of its petition and of EPA's decision. *See* Decl. of Byron Bunker ¶¶ 9–13.

**B.      EPA's Proposed Denial and June 2022 Denial Action**

On December 7, 2021, EPA proposed to deny sixty-five pending small refinery exemption petitions, including TSAR's,[2] based on its application of a new statutory interpretation and common economic analysis under which EPA concluded that compliance with the RFS program did not cause small refineries to bear disproportionate economic hardship for the applicable years.  *See* EPA, Proposed RFS Small Refinery Exemption Decision, EPA-420-D-21-001, https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P1013KMM.pdf ("Proposed Denial"); Notice of Opportunity To Comment on Proposed Denial of Petitions for Small Refinery Exemptions, 86 Fed. Reg. 70999 (Dec. 14, 2021).

On June 3, 2022, EPA issued a single action denying sixty-nine exemption petitions for the 2016 through 2021 RFS compliance years, including TSAR's 2019 through 2021 petitions.  *See generally* June 2022 Denial Action, https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P10156DA.pdf.  The June 2022 Denial Action applied EPA's new interpretation of the CAA provisions regarding disproportionate economic hardship for exemption petitions and economic analysis.  EPA concluded that RFS compliance costs are passed through to consumers in the price of transportation fuel, and therefore none of the sixty-nine

---

[2] ███████████████████████████████████████████████████████████

petitions demonstrated disproportionate economic hardship caused by compliance with the RFS program in the applicable years.

EPA also undertook a series of actions that increase flexibility for compliance. *See, e.g.*, Renewable Fuel Standard (RFS) Program: Extension of Compliance and Attest Engagement Reporting Deadlines, 87 Fed. Reg. 5696 (Feb. 2, 2022); Renewable Fuel Standard (RFS) Program: Alternative RIN Retirement Schedule for Small Refineries, 87 Fed. Reg. 54158 (Sept. 2, 2022).[3]

## ARGUMENT

### I. THE MOTION SHOULD BE DENIED INSOFAR AS IT SEEKS RELIEF UNAVAILABLE IN A PETITION FOR REVIEW OF AGENCY ACTION.

TSAR seeks not only a stay of the action under review—EPA's June 2022 Denial Action, which denied TSAR's exemption petitions for RFS compliance years 2019 through 2021—but also a suspension of TSAR's pre-existing, statutory RFS compliance obligations, *see* Motion at 2–3, which are not before this Court. Had TSAR filed in the proper court, *see* note 1, *supra*, its request for a stay of the June 2022 Denial Action would be procedurally proper (although it would fail, for reasons stated in Part II, *infra*). But TSAR's suspension request is improper for

---

[3] ████████████████████████████████████████████

reasons that transcend venue:  A court sitting in review of administrative action has authority to grant relief only with respect to the agency action before it.  Reviewing courts lack authority to order the agency to take action to *change* the preexisting status or rights of the challenger pending conclusion of judicial review, which is what TSAR is seeking here.

APA section 705 provides that, "to prevent irreparable injury, the reviewing court" may "postpone the effective date of an agency action" or "preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705; *see also Kondapally v. USCIS*, 2020 U.S. Dist. LEXIS 156095, at *19 (D.D.C. Aug. 27, 2020) (limiting relief to return to status quo or a delay of the challenged action) (citations omitted)); *Salt Pond Assocs. v. U.S. Army Corps of Eng'rs*, 815 F. Supp. 766, 776 (D. Del. 1993) (same); 5 U.S.C. § 706(2) (limiting APA relief to holding unlawful and setting aside the challenged agency action).  A return to the status quo or delay of the June 2022 Denial Action would not stay TSAR's RFS compliance obligations for 2019 through 2021.  *See Comprehensive Cmty. Dev. Corp. v. Sebelius*, 2012 U.S. Dist. LEXIS 30623, at *25 (S.D.N.Y. Mar. 7, 2012) (defining "status quo" in a discussion of the potential application of APA section 705 as being "at the commencement of this lawsuit"); *see also* Bunker Decl. ¶¶ 9–13 (explaining small refineries' compliance options where an exemption petition is pending at the compliance deadline).

TSAR has not identified any authority that would allow the Court to stay TSAR's pre-existing RFS compliance obligations under the CAA where TSAR is not directly challenging those obligations or the underlying authority. TSAR's compliance obligations arise from authorities not challenged in TSAR's petition, including the CAA itself, *see* 42 U.S.C. § 7545(*o*)(3)(B)(ii)(I), EPA's existing regulations, 40 C.F.R. § 80.1406, and a series of EPA actions that provide increases in time and flexibility for compliance, *e.g.*, 87 Fed. Reg. 5696; 87 Fed. Reg. 54158. TSAR does not challenge any of these authorities or actions here (nor could it), and the Court therefore does not have jurisdiction to stay their effect.

In fact, TSAR's own filings in other courts where it challenges the June 2022 Denial Action undermine the relief requested in its Motion here. *See, e.g.*, Petitioners' Response in Opposition to Motion to Intervene at 9–13, *Sinclair Wyo. Refin. Co. v. EPA*, No. 22-1073 (D.C. Cir. Dec. 1, 2022), Doc. 1975793 (opposing an intervention motion on standing grounds by correctly observing that, even if the June 2022 Denial Action is ultimately vacated, such an outcome would merely result in *remand* to EPA, not a *grant* of TSAR or other small refineries' exemption petitions). By seeking a stay of its pre-existing RFS compliance obligations, TSAR asks this Court not merely to stay EPA's June 2022 Denial Action but rather *to grant* TSAR's exemption petitions that EPA denied. Yet—*even according to*

*TSAR*—courts reviewing *the merits* of the June 2022 Denial Action lack the power to provide such relief. *Id.*

TSAR's reliance on the All Writs Act to stay TSAR's pre-existing RFS compliance obligations under the CAA or EPA regulations or to stay EPA's enforcement authority, *see* Motion at 25–26, is misplaced. TSAR has not even *attempted* to demonstrate a basis to seek the extraordinary relief of a writ of mandamus ordering EPA to refrain from enforcing TSAR's RFS compliance obligations under the All Writs Act. *See In re Dupuy Orthopedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017) (concluding that mandamus is available as "a drastic and extraordinary remedy reserved for really extraordinary causes").

Even if TSAR had sought mandamus, EPA's June 2022 Denial Action was well within its discretion, as described in Part II.A, *infra*, and TSAR's argument would fail. Moreover, the All Writs Act does not control where another "statute specifically addresses the particular issue at hand." *Carlisle v. United States*, 517 U.S. 416, 429 (1996); *see also Nelson v. Reese*, 214 F. App'x 465, 466–67 (5th Cir. 2007) (same) (quoting *Carlisle*, 517 U.S. at 429). It is "that authority, and not the All Writs Act, that is controlling." *Carlisle*, 517 U.S. at 429. TSAR's Motion should be denied.

REDACTED PUBLIC VERSION

## II. TSAR HAS NOT MET ITS BURDEN FOR THE EXTRAORDINARY REMEDY OF A STAY PENDING APPEAL.

TSAR fails to grapple with the substance of EPA's June 2022 Denial Action. Congress promulgated the small refinery exemption as a safety valve to enable small refineries to seek relief in the narrow circumstances where they can show disproportionate economic hardship from RFS compliance. Following an unprecedented increase in the number of exemption petitions and extensive litigation over EPA's grants of small refinery exemptions, EPA comprehensively reviewed its approach to deciding them, including review of refinery-specific materials submitted by many small refineries in support of their exemption petitions, years of experience and data collected by implementing the RFS program, and an exhaustive analysis of the RFS credit (RIN) and fuels markets. Consistent with the statute and a decision from the Tenth Circuit, EPA concluded that Congress intended exemptions only for hardship caused by RFS compliance and where the hardship is "disproportionate."

EPA also determined that TSAR and other petitioning small refineries did not experience disproportionate economic hardship for the compliance years at issue. In fact, the evidence demonstrates that TSAR and other small refineries passed on their RFS compliance costs in the sales price of their products through

RIN discount and RIN cost passthrough principles. Therefore, the petitioning small refineries experience no hardship from RFS compliance.

EPA's June 2022 Denial Action is consistent with the statute and well-supported. TSAR fails to demonstrate any likelihood of success on the merits, any harm that will be alleviated by the requested stay or that is caused by RFS compliance, or even that a stay is in the public interest. The Court should deny TSAR's Motion for the extraordinary remedy of a stay pending appeal.

### A. TSAR Demonstrates No Likelihood of Success on the Merits.

#### 1. EPA's June 2022 Denial Action is consistent with the CAA.

EPA's revised interpretation of 42 U.S.C. § 7545(*o*)(9)(B) in the June 2022 Denial Action accords with the statutory text and is reasonable. EPA's past approach allowed it to grant an exemption where a small refinery experienced disproportionate economic hardship for reasons *other than* RFS compliance. June 2022 Denial Action at 17–19. EPA reconsidered and revised its approach following the Tenth Circuit's decision in *Renewable Fuels Association v. EPA*, 948 F.3d 1206 (10th Cir. 2020) ("*RFA*"), *reversed on other grounds*, *HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Association*, 141 S. Ct. 2172 (2021) ("*HollyFrontier*"), which holds that EPA's prior approach to finding

"disproportionate economic hardship" for reasons other than RFS compliance was "outside the scope of the EPA's statutory authority" in 42 U.S.C. § 7545(*o*)(9)(B).

In the June 2022 Denial Action, EPA carefully reconsidered the language and purposes of the small refinery exemption provisions. The statute, 42 U.S.C. § 7545(*o*)(9)(B)(i), authorizes EPA to grant an extension of the exemption "under subparagraph (A) for the reason of disproportionate economic hardship." Subparagraph (A) in § 7545(*o*)(9)(A)(ii)(II) allows an exemption if the Department of Energy ("DOE") determines that the small refinery "would be subject to a disproportionate economic hardship if required to comply" with RFS requirements. Thus, EPA rationally concluded that requiring disproportionate economic hardship due to RFS compliance is the most reasonable approach for deciding exemption petitions. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (recognizing that an agency change need only be permissible under the statute, with an explanation of why the new approach is better). EPA's Proposed Denial and June 2022 Denial Action thoroughly explained its changed approach to determining disproportionate economic hardship, allowed opportunity for public comment and submission of supplemental refinery-specific material, and reflected consultation with DOE. *See* Bunker Decl. ¶¶ 23–29. EPA's interpretation should be upheld.

Contrary to the CAA, TSAR argues that Congress intended for EPA to determine disproportionate economic hardship for reasons other than RFS compliance. *See* Motion at 17–18. This and related arguments fail. EPA's revised interpretation is only "narrower" than its previous interpretation, *id.* at 16–17, in that it is more consistent with the language of the statute, requiring that disproportionate economic hardship be caused by RFS compliance. EPA's requirement that small refineries show an impact from RFS compliance that is greater than that experienced by other refineries, June 2022 Denial Action at 17, does not add an impermissible "severity" requirement as TSAR claims, Motion at 17–18; rather, EPA simply interprets the word "disproportionate" in the statute consistent with its meaning.

TSAR also alleges that EPA reduced the role of the findings of DOE's 2011 Study and "other economic factors" into a single factor of RFS compliance costs. *Id.* at 17–18. EPA extensively consulted with DOE, including thirteen individual meetings, and considered the 2011 Study and other economic factors. *See* June 2022 Denial Action at 24–26; Bunker Decl. ¶ 25. Beyond compliance costs, EPA considered economic factors such as "the dynamics and characteristics of the fuels and RIN markets, publicly available price data, confidential financial and other refinery-specific data submitted by the petitioning small refineries, and all the data other commenters submitted on the Proposed Denial." June 2022 Denial Action at

18.  While EPA did not consider economic factors unrelated to determining whether a small refinery's RFS compliance costs cause alleged disproportionate economic hardship, *id.*, that choice lies well within EPA's discretion, *see* 42 U.S.C. § 7545(*o*)(9)(A)–(B); *Hermes Consol., LLC v. EPA*, 787 F.3d 568, 575–577 (D.C. Cir. 2015).

TSAR criticizes EPA's statements that it is "highly unlikely," June 2022 Denial Action at 19, that any refinery would face disproportionate economic hardship "absent a compelling demonstration," 87 Fed. Reg. at 54161 n.27.  These statements merely indicate that a small refinery would have to provide sufficient empirical data to disprove EPA's well-supported conclusion, not that EPA will "never" grant another exemption, as TSAR claims, Motion at 18.

TSAR also incorrectly argues that the Supreme Court's decision in *HollyFrontier* prohibits EPA's statutory interpretation.  *See* Motion at 18.  Far from implicating *HollyFrontier*'s holding, EPA's statutory reading comports with *HollyFrontier* insofar as the Supreme Court recognized that the meaning of words in 42 U.S.C. § 7545(*o*)(9)(B) should be interpreted consistent with the meaning of the same words in § 7545(*o*)(9)(A).  141 S. Ct. at 2177.  TSAR is also not aided by the Tenth Circuit's decision in *Sinclair Wyoming Refining Company v. EPA*, 887 F.3d 986, 997 (10th Cir. 2017), which held that EPA cannot use viability

impairment as the sole criterion for determining hardship, because the June 2022

Denial Action does not impose a viability test.  TSAR's challenges fail.

### 2. In the June 2022 Denial Action, EPA adjudicated individual petitions and considered refinery-specific facts consistent with the CAA.

Contradicting its previous filings in this case,[4] TSAR argues that EPA failed

to consider TSAR's exemption petitions individually.  Motion at 14–16.  EPA

adjudicated each of sixty-nine exemption petitions in the June 2022 Denial Action,

responded to cross-cutting small refinery comments and arguments in the

aggregate, *see* June 2022 Denial Action at 59–70, and responded to specific

confidential facts and arguments raised by each petitioning small refinery in

confidential Appendices C through U—including TSAR's in Appendix U, *see*

Bunker Decl., Ex. C.

Fundamentally, TSAR protests EPA's decision to adjudicate sixty-nine

exemption petitions in one action.  *See* Motion at 14–16.  However, agencies have

discretion to determine how to shape their regulatory actions.  *NAACP v. FPC*, 425

U.S. 662, 668 (1976); *SEC v. Chenery Corp.*, 332 U.S. 194, 202 (1947).  Nothing

in 42 U.S.C. § 7545(*o*)(9)(B) requires EPA to adjudicate each exemption petition

---

[4] *See* Petitioners' Response to EPA's Motion to Transfer the Petition for Review to the D.C. Circuit or Dismiss Based on Improper Venue at 2, 14, 17 (Sept. 19, 2022), Doc. 00516476915 (arguing that "individual petitions were denied," EPA "has bundled various individual adjudications together," and EPA "issued 69 denials of hardship petitions").

separately or prohibits EPA from deciding multiple exemption petitions in a single action.

### 3. The June 2022 Denial Action did not violate TSAR's due process rights and is not retroactive.

TSAR contends that the June 2022 Denial Action deprived TSAR of due process rights and was impermissibly retroactive without providing adequate notice. Motion at 19–22. TSAR's mere expectation that it would receive an exemption based on past EPA exemptions does not create a constitutionally protected right for which TSAR could, as a matter of law, be deprived of due process. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) (concluding that due process for an alleged property right requires that a person "have a legitimate claim of entitlement" not merely "a unilateral expectation").

The June 2022 Denial Action is also not impermissibly retroactive. A primarily retroactive action "imposes new sanctions on past conduct" and is deemed "invalid unless specifically authorized" by statute. *Nat'l Petrochemical & Refiners Ass'n v. EPA*, 630 F.3d 145, 159 (D.C. Cir. 2010). A secondarily retroactive action is one that "merely 'upsets expectations'" and is not presumptively invalid; instead, it is deemed "invalid only if arbitrary and capricious." *Id.* (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994)).

Here, the June 2022 Denial Action is not primarily retroactive because it does not take away or impair "vested rights acquired under existing law," or create

a "new obligation, impose[] a new duty, or attach[] a new disability, in respect to transactions or considerations already past." *I.N.S. v. St. Cyr*, 533 U.S. 289, 321 (2001).  The Action decides TSAR's *pending* 2019 through 2021 exemption petitions—for the first time—and confirms that TSAR will have to comply with its *pre-existing* RFS obligations.[5]  The June 2022 Denial Action thus does not impose new duties or consequences at all, as compliance is a consequence of statutory and regulatory requirements applicable to all obligated parties.  *See, e.g.*, 42 U.S.C. § 7545(*o*)(3)(B)(ii)(I); 40 C.F.R. § 80.1406.

Nor is the June 2022 Denial Action secondarily retroactive.  As explained in Part II.A, s*upra*, EPA's action was reasonable, and EPA is not "precluded from announcing new principles" in its informal adjudications.  *Nat'l Lab. Rels. Bd. v. Bell Aerospace Co. Div. of Textron Inc.*, 416 U.S. 267, 294 (1974).  If anything,

███████████████████████████████████████

███████████████████████████████████████

███████████████████.  Bunker Decl. ¶¶ 14–15, 43.  TSAR and other small refineries also had ample notice since at least early 2021 that EPA would likely reconsider its past approach to determining disproportionate economic hardship

---

[5] EPA's lack of action on TSAR's petition within the ninety-day statutory time frame under 42 U.S.C. § 7545(*o*)(9)(B) gave TSAR no reasonable expectation that EPA would grant an exemption, given that the exemption is entirely discretionary and must be justified with each petition.

based on the events of the past three years, including many EPA outreach and procedural efforts ███████████████████████████. *Id.* ¶¶ 16–24.

The June 2022 Denial Action is also not a retroactive rulemaking. *See* Motion at 22. EPA previously explained that the Action is not a rulemaking at all, much less a retroactive one, and incorporates its previous arguments by reference. *See* June 2022 Denial of Petitions for RFS Small Refinery Exemptions: Appendices, at B8–B12.[6] Further, TSAR itself has previously argued that the Action consists of sixty-nine *adjudications*. *See* note 4, *supra*. TSAR's arguments should be rejected.

4.     ███████████████████████████ **does not invalidate EPA's conclusions on RIN discount and RIN cost passthrough.**

TSAR argues ███████████████████████████ renders the June 2022 Denial Action arbitrary and capricious because ████████ ███████████████████████████████████████████ ███████████████ Motion at 23–24. TSAR's argument fails for two reasons.

*First*, ███████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████

[6] https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P10156FE.pdf.

**REDACTED PUBLIC VERSION**

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

     While EPA's economic analysis is complex, it starts with Congress requiring

EPA to create a market for renewable transportation fuel and a credit system to

allow obligated parties to comply.  *See, e.g.*, 42 U.S.C. § 7545(*o*)(5).  As a

compliance mechanism, RINs correspond to particular quantities of renewable

fuel.  40 C.F.R. §§ 80.1425–80.1427.  Because the RIN and fuels markets are

highly competitive, they do not allow for one market participant to be advantaged

or disadvantaged by its role within the market; instead all "types of obligated

parties bear the same cost from compliance with the RFS program."  June 2022

Denial Action at 30.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

**REDACTED PUBLIC VERSION**

TSAR wrongly argues that

, all obligated parties receive an increased price (and increased revenue) for the sale of transportation fuel products

from the operation of the RFS in the market.  Bunker Decl. ¶¶ 46–49.

TSAR also does not challenge the validity of RIN discount

*Second*, EPA did not "explicitly endorse[]" that TSAR or any other

obligated party refrain from purchasing RINs ratably in 2019 through 2021.  *See*

Motion at 23.

Bunker Decl. ¶¶ 50–51.

*Id.* ¶ 41.

### 5. The post-decisional GAO Report should not be considered and does not evidence likelihood of success on the merits.

TSAR inappropriately relies on a Government Accountability Office report from November 2022 ("GAO Report").[7]  Motion at 24–25.  The GAO Report is not part of the administrative record for the June 2022 Denial Action and therefore cannot be considered for purposes of determining TSAR's likelihood of success on the merits.  5 U.S.C. § 706; *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).  And any consideration should correct TSAR's omissions and inaccuracies by accounting for EPA's criticisms included within the GAO Report, e.g., that GAO's conclusions "do not accurately reflect the [small refinery exemption] decisions EPA issued in" the June 2022 Denial Action.  GAO Report, App. IV at 55–61; *see also* Bunker Decl. ¶¶ 53–56.  Indeed, EPA's criticisms further demonstrate that the GAO Report should not be considered at all and that it does not evidence a likelihood of success on the merits.  *See United States v. Jones*, 664 F.3d 966, 975 (5th Cir. 2011) (affirming exclusion of GAO reports "in light of the reports' limited probative worth"); *United States v. Wiszowaty*, 506 F.3d 537, 541 (7th Cir. 2007) (affirming exclusion of GAO report that was "confusing and irrelevant").

_____

[7] U.S. Government Accountability Office, Renewable Fuel Standard: Actions Need to Improve Decision-Making in the Small Refinery Exemption Program, GAO-23-104273 (Nov. 2022), https://www.gao.gov/assets/820/813134.pdf.

**B.    TSAR Has Not Shown That a Stay of EPA's June 2022 Denial Action Is Necessary to Avert Irreparable Harm.**

As discussed in Part I, *supra*, a stay of EPA's June 2022 Denial Action will not alleviate the harm TSAR alleges from its RFS compliance obligations for 2019 through 2021. Instead, such a stay would merely put TSAR back in the status quo ante of its RFS compliance obligations coming due under EPA's current schedule without a decision—either way—on TSAR's exemption petitions. TSAR has also not sought or demonstrated entitlement to the extraordinary relief of a writ of mandamus ordering EPA to refrain from enforcing the RFS against TSAR, nor could it make such a showing for the reasons described in Part II.A, *supra*.

Moreover, TSAR's alleged harm lacks foundation. ████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████ Bunker Decl. ¶¶ 42–48. And the increased revenue from the RFS for compliance years 2019 through 2021 ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

[REDACTED]

## C.    The Requested Stay Is Not in the Public Interest.

The stated goal of the RFS is to "increase the production of clean renewable fuels." 121 Stat. 1492.  Exempting TSAR from its RFS compliance obligations during the pendency of this petition for review would contravene this goal because it would likely reduce demand for, and therefore production of, renewable fuels by artificially increasing the supply of RINs.  Bunker Decl. ¶¶ 58–62.  While Congress provided a safety valve for small refineries, it limited that exemption to those that could establish disproportionate economic hardship from RFS compliance, which TSAR has not done.

A stay is also not in the public interest because [REDACTED]

[REDACTED] *See* Bunker Decl. ¶¶ 14–30.  [REDACTED] TSAR, [REDACTED]

[REDACTED] *See* Mettetal Decl. ¶ 10

[REDACTED]

[REDACTED] should not be rewarded with a stay while other obligated parties comply.



# CONCLUSION

The Court should deny TSAR's Motion for Stay Pending Appeal.

Respectfully submitted,

TODD KIM
Assistant Attorney General

s/ *Bryan J. Harrison*
BRYAN J. HARRISON
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Of Counsel:                              Tel:  (202) 307-0930
                                         bryan.harrison@usdoj.gov
SUSAN STAHLE
U.S. Environmental Protection Agency     PATRICK R. JACOBI
Office of General Counsel                U.S. Department of Justice
Washington, DC                           Environment and Natural Resources Division
                                         Environmental Defense Section
                                         Denver Place Building
                                         999 18th Street
                                         Suite 370 - South Terrace
                                         Denver, CO 80202
                                         Tel:  (303) 844-1348
                                         patrick.r.jacobi@usdoj.gov

January 11, 2023

## CERTIFICATES OF COMPLIANCE

I hereby certify that this response complies with the requirements of Fed. R. App. P. 27(d)(2)(A) because it contains 5,195 words according to the count of Microsoft Word, excluding the parts of the response exempted by Fed. R. App. P. 32(f), and therefore is within the word limit of 5,200 words.

I further certify that this response complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally-spaced font, and is double-spaced, except for headings, block quotes, and footnotes.

Dated:  January 11, 2023                    s/ *Bryan J. Harrison*
                                            BRYAN J. HARRISON

**REDACTED PUBLIC VERSION**

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to this Court's December 30, 2022 Order, Doc. 00516593405, the foregoing EPA's Redacted Response to The San Antonio Refinery's Motion for Stay Pending Appeal was filed with the Court in electronic format via CM/ECF, which caused copies of the redacted filing to be served on all counsel of record.


Dated:  January 11, 2023                    s/ *Bryan J. Harrison*
                                            BRYAN J. HARRISON