UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

| | |
|---|---|
| WYNNEWOOD REFINING CO. LLC; CALUMET SHREVEPORT REFINING, LLC; AND THE SAN ANTONIO REFINERY LLC,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Respondent. | No. 22-60425<br><br>(consolidated with Nos. 22-60433 & 22-60434) |

**THE SAN ANTONIO REFINERY'S REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

EPA offers no meaningful rebuttal to The San Antonio Refinery LLC's ("TSAR") most important point: Without a stay from this Court, EPA's denial of TSAR's hardship petitions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ EPA's response instead contradicts its June Denials of hardship petitions and offers new, inconsistent arguments for its decision. In that vein, EPA tells this Court to ignore GAO's damning assessment of the June Denials. Yet EPA fails to disclose that, two days before filing its response here, it issued a report that confirms parts of

1

GAO's analysis. This Court should follow the Eleventh Circuit's recent decision and grant TSAR's motion for stay pending appeal.

## ARGUMENT

### I. This Court can stay RFS compliance obligations, just as the Eleventh Circuit did.

The power to stay agency action is necessarily the power to stay its consequences, and the direct consequence of EPA's unlawful denials is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This Court has broad authority to "issue all necessary and appropriate process … to preserve status or rights pending conclusion of the review proceedings" "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury." 5 U.S.C. §705. On December 27, 2022, the Eleventh Circuit relied on §705 to stay an Alabama small refinery's RFS compliance obligations pending appeal of EPA's June Denials. *Hunt Refin. Co. v. EPA*, No. 22-12535 (11th Cir.), Doc. 33. This Court can and should do the same.

EPA claims (at 6) this Court can stay merely the denial of relief, not attendant compliance obligations, because it cannot "*change* the preexisting status or rights of the challenger." But per EPA's own caselaw, equitable relief is "'intended to maintain a status quo *or to preserve the*

*relative positions of the parties until a trial on the merits can be held.*'" *Kondapally v. USCIS*, No. 20-00920, 2020 WL 5061735, at *3 (D.D.C. Aug. 27, 2020) (quoting *Sherley v. Sebelius*, 689 F.3d 776, 781-82 (D.C. Cir. 2012) (emphasis added). EPA's denials unlawfully deprived TSAR of hardship exemptions for 2019–2021, which it had received in previous compliance years. TSAR asks this Court to "*preserve* [its] status or rights" by staying those denials—the agency order that would change the status quo and result in the agency requiring RFS compliance. 5 U.S.C. §705 (emphasis added).

TSAR is not asking this Court to *change* its rights or "*grant* TSAR's [hardship] petition." Resp. 7-8. Because RFS compliance disproportionately harms TSAR, it has a statutory right to relief. 42 U.S.C. §7545(o)(9)(B). If this Court later rules EPA acted unlawfully, then it will vacate EPA's denial and remand for issuance of a lawful decision. A stay pending appeal simply preserves TSAR's status until this Court can hear its challenge.

EPA next argues (at 8) that TSAR has not "*attempted* to demonstrate a basis" for the "extraordinary relief" of mandamus, and that mandamus is improper "where another statute specifically addresses the

3

particular issue at hand." Other than unlawful criminal prosecution, it is difficult to imagine a more appropriate basis for mandamus than stopping the government from ███████████████████████████████ That is what is at stake here. Mot. 25-27. And if EPA were correct about §705, that would only confirm that no other "statute specifically addresses the particular issues at hand." Resp. 8.

EPA insists (at 7) that TSAR cannot obtain a stay because its "compliance obligations arise from authorities not challenged in TSAR's petition." That is wrong. TSAR is not subject to RFS compliance because it is statutorily entitled to hardship relief. EPA wrongfully denied relief, and the merits of that denial will be adjudicated *here*. If TSAR sought to stay compliance *elsewhere*, EPA undoubtedly would argue that the merits of TSAR's motion can be addressed only *here*. Tellingly, EPA does not propose another proceeding where TSAR could "properly" seek a stay.

Whether this Court ultimately grants a stay pending appeal under §705 or the All Writs Act is immaterial to TSAR, ██████████ ████████████████████████████████

4

II. **TSAR is likely to succeed on the merits.**

  A. **The GAO Report and EPA's RIN Price Analysis are properly before this Court.**

GAO investigated EPA's denials of "all pending petitions for compliance years 2019 through 2021." GAO Report 2, 9. GAO noted that EPA's denials "assumed that all parties pay and receive one price for RINs." *Id.* at 10. But GAO "analyzed EPA's RIN market transaction data" and concluded that EPA's "assumption is incorrect"—instead, small refineries "were either paying more to buy RINs or receiving less when they sell RINs, relative to larger companies." *Id.*

EPA tells this Court (at 21) to ignore the GAO Report, claiming it is of "limited probative worth" and "irrelevant." But GAO evaluated the same evidence that is in the administrative record or was otherwise available to EPA when it issued the June Denials. The GAO Report is both relevant and highly probative.

EPA's own recent analysis confirms this. Two days before EPA filed its response here, the agency posted on its website a "final analysis" "of the price of RINs and small refineries" and a "response" to the GAO

5

Report.[1] There, EPA explains its own (belated) RIN Price Analysis and finds the same thing GAO did—small refineries paid more when buying RINs and received less when selling them than both "the average daily price" and "the 20 largest refineries."[2]

EPA cannot seriously dispute the GAO Report's relevance or probative value, nor can EPA ignore its own analysis confirming GAO's findings. This Court is free to take judicial notice of these publicly available reports. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).

### B. EPA concedes the CAA requires individualized adjudications.

Section 7545(o)(9)(A)-(B) "requires EPA to adjudicate hardship petitions on an individual basis." Mot. 15. Instead of contesting that requirement, EPA now claims it fulfilled it. Resp. 14-15. That contradicts EPA's previous representation to this Court that it "made no unique or individualized findings as to the ability of any of the sixty-nine

---

[1] EPA, *An Analysis of the Price of Renewable Identification Numbers (RINs) and Small Refineries*, EPA-420-R-22-038 (Dec. 2022), https://www.epa.gov/system/files/documents/2022-12/420r22038.pdf ("RIN Price Analysis").
[2] *Id.* at 1, 10.

6

petitioning small refineries," and did *not* consider "the particulars of any specific small refinery." EPA Mot. to Transfer 16 (Sept. 8, 2022), Doc. 00516465312. EPA thus alternates between describing a single, nation-wide action (when seeking transfer) and refinery-specific adjudications (when arguing the merits).

To deflect from its inconsistent representations, EPA (at 14 & n.4) accuses TSAR of "[c]ontradicting its previous filings in this case," where TSAR stated that EPA denied "individual petitions" and "issued 69 denials of hardship petitions," *id.* There is no contradiction. There were 69 separate hardship petitions; EPA denied them all. What the statute requires—what EPA failed to do—is evaluate and decide them individually. Mot. 14-16. This has always been TSAR's position. *See id.* at 16 ("EPA did not *actually* evaluate whether TSAR faced disproportionate economic hardship, which the statute plainly requires."); Petitioners' Resp. to Mot. to Transfer 18 (Sept. 19, 2022), Doc. 00516476915 ("Congress specifically set out that grants or denials of hardship relief must be individualized, based on determinations of refinery-specific hardship.").

7

### C. EPA admits it rewrote the statute.

EPA unlawfully rewrote the CAA. *See* Mot. 16-18. Congress required EPA to consider "the findings of the [DOE] study" and "other economic factors" to determine whether small refineries suffer disproportionate economic hardship. *Id.* at 16-17. EPA reduces those considerations to the single question whether a refinery's "specific RFS *compliance costs* are disproportionate compared to other refineries' RFS *compliance costs*." June Denials 17 (emphasis added). EPA admits (at 13) it "did not consider economic factors unrelated to determining whether a small refinery's RFS compliance costs cause alleged disproportionate economic hardship." But EPA lacks discretion to "take[] the holistic evaluation required by Congress and morph[] it into a single question." *Sinclair Wyo. Refin. Co. v. EPA*, 887 F.3d 986, 997 (10th Cir. 2017).

EPA also created a severity requirement, insisting disproportionality must be "of sufficient magnitude to warrant the exemption." June Denials 17. EPA now tries (at 12) to retreat from that, asserting it merely required "that small refineries show an impact from RFS compliance that is greater than that experienced by other refineries." Whatever EPA's litigation position, that is not what the June Denials say. If some "greater"

8

effect is truly all TSAR needed to show, then EPA's reasoning and decision were arbitrary and capricious. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ And GAO confirmed that small refineries "either pay[] more to buy RINs or receiv[e] less when they sell RINs, relative to larger companies." GAO Report 10.

Despite previously expressing its intent to *never* grant small refinery hardship relief again, June Denials 63; 87 Fed. Reg. 54158, 54161 n.27 (Sept. 2, 2022), EPA now claims (at 13) it will entertain future hardship petitions if small refineries provide "sufficient empirical data to disprove" EPA's RIN-cost-passthrough theory. That is a hollow promise. "[T]he only information EPA requires refineries to submit in their exemption petitions is information that EPA officials stated they do not plan to use." GAO Report 14.

### D.    The June Denials are impermissibly retroactive.

EPA offers two responses (at 15-17) to TSAR's retroactivity arguments: the June Denials are not retroactive, and TSAR had sufficient notice. Both fail.

9

EPA argues (at 15-16) that because it denied "*pending*" petitions, it did not impose new consequences "on past conduct." But EPA did exactly that. The conduct relevant to hardship petitions occurs during the compliance year. 42 U.S.C. §7545(o)(2)(B). EPA did not deny the 2019–2021 petitions under its new approach until June 2022. And to the extent the "pending" status of TSAR's petitions matters, they were "pending" only because EPA violated the law by flouting Congress's 90-day decision deadline. *See* GAO Report 21 (EPA resolved 2019 hardship petitions "on average, more than 700 days" after receiving them).

EPA claims (at 16-17) TSAR had "ample notice … that EPA would likely reconsider its past approach" to hardship petitions. But a vague sense EPA may make some change is not enough. Notice is "fair" only if it allows parties "to identify, with '*ascertainable certainty*,' the standards with which the agency expects parties to conform." *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995) (emphasis added).

Primarily, EPA points to the vacated Tenth Circuit decision in *Renewable Fuels Association* (*RFA*) *v. EPA*, 948 F.3d 1206 (10th Cir. 2020). Declaration of Byron Bunker ¶¶15-19 (Nov. 7, 2022). That litigation did not provide notice because EPA was on the small refineries' side until it

flip-flopped and *lost* in the Supreme Court. After being reversed by the Supreme Court, the Tenth Circuit *vacated* its judgment. *RFA v. EPA*, 854 F. App'x 983 (10th Cir. July 29, 2021). Its new judgment then *affirmed* EPA's small refinery hardship *grants. Id.*, Docs. 010110555246, 010110555262.

EPA also claims it signaled in August 2021 it was reconsidering previous hardship grants, but EPA offered nothing approaching "ascertainable certainty" about its future approach. *See* Mettetal Decl. ¶6; Bunker Decl. ¶¶18-22. TSAR was in the dark about EPA's new approach until December 2021, when EPA first proposed the denials. *See id.* That was long after 2019–2020, and 2021 was nearly over.

### E. EPA contradicts its June Denials on ratable RIN purchases.

EPA denied TSAR's hardship petitions by assuming compliance costs cannot disproportionately affect refineries because all refineries "recover the costs of the RINs they purchase in the sales price of the petroleum fuel they sell." June Denials 55. This assumption requires refineries to "choose to purchase the RINs they need for compliance on a ratable basis." *Id.* Ratable RIN purchases are key because, per EPA's theory, fuel prices incorporate *current* RIN prices. *Id.*

11

In a stunning self-contradiction, EPA now says (at 17) that, "regardless of when TSAR purchases a RIN," it will recover the RIN price via its fuel sales. EPA previously said the opposite. June Denials 55 ("[O]bligated parties that choose to delay RIN purchases … recover more or less than the price they paid for RINs … depending on whether the RIN price on the purchase date is higher or lower than the RIN price on the date the petroleum fuel is sold."). EPA's only response is that TSAR will "recover *an amount* of revenue," not one equal to the cost of purchasing RINs—thereby conceding that EPA's RIN-cost-passthrough theory does not apply to TSAR. Resp. 19 (emphasis added).

TSAR, the GAO Report, and EPA confirm this. First, ▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Second, GAO found that small refineries do not fully recover their RIN costs. GAO Report 10. Finally, EPA's belated RIN Price Analysis reveals that ratable RIN purchases can actually *increase* the compliance cost disparity between small and large refineries. RIN Price Analysis 7 ("[T]he relative difference that small refineries pay and receive for RINs traded in the same year as they are generated ... is larger than for RINs

12

generated in the prior year."). Thus, EPA undermines its claim that TSAR somehow caused its own hardship.

**III. Absent a stay,** ███████████████████████████

███████████████████████████████████████

███████████████████████████████████████

EPA insists (at 22) "TSAR's alleged harm lacks foundation" but offers no legitimate basis for questioning TSAR's integrity. EPA asserts (at 22-23) only that TSAR has not "account[ed] for" "significant RFS-related revenues" from previously granted hardship relief.

███████████████████████████████████████

███████████████████████ For EPA to assume they do displays a breathtaking misunderstanding of a program EPA is charged with administering. The RFS *imposes additional costs* on small refineries like TSAR—obligations to purchase credits to demonstrate compliance with biofuel blending targets. Recognizing these additional costs would hit small refineries harder, *Sinclair*, 887 F.3d at 989, Congress created a "safety valve" to relieve that harm. *HollyFrontier Cheyenne Refin., LLC v. RFA*, 141 S. Ct. 2172, 2182 (2021).

13

Hardship relief does not confer a benefit, it relieves a burden. TSAR received hardship exemptions in previous years because the additional cost of RFS compliance would have harmed the refinery. For TSAR, hardship relief is not a windfall, ███████████

### IV. Saving TSAR from EPA's illegal conduct is in the public interest.

TSAR is essential to its community and to regional and national fuel stability. Mot. 27-28. The public interest favors preserving TSAR's refinery and requiring EPA to follow the law. *Id.*

EPA argues (at 23) that staying TSAR's compliance obligations will "likely reduce demand for, and therefore production of, renewable fuels." But that simply ignores TSAR's point: "[t]he biofuels in the years at issue (2019-2021) have already been blended. A stay will not reduce renewable fuel production or blending by a single drop." Mot. 28.

Moreover, refineries cannot use RINs retroactively, i.e., use 2021 RINs to satisfy 2020 obligations. That is currently possible only because EPA authorized it (for small refinery 2020 compliance) to atone for the agency's unlawful, egregious delays in deciding hardship petitions. 87 Fed. Reg. 35711, 35715 (June 13, 2022). TSAR should not be prejudiced, nor this Court limited, by EPA's attempts to clean up its own mess.

14

## CONCLUSION

This Court should stay TSAR's RFS compliance obligations pending resolution of this appeal.

Dated: January 6, 2023

Respectfully submitted,

*s/ Jonathan G. Hardin*

Jonathan G. Hardin
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6297
Facsimile: 202.654.6211
JHardin@perkinscoie.com

Eric B. Wolff
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: 206.359.3779
Facsimile: 206.359.9000
EWolff@perkinscoie.com

Karl J. Worsham
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
KWorsham@perkinscoie.com

Attorneys for The San Antonio Refinery LLC

# CERTIFICATE OF COMPLIANCE

This document complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,597 words, excluding the parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used for the word count).

Dated: January 6, 2023

                                       *s/ Jonathan G. Hardin*
                                       Jonathan G. Hardin
                                       PERKINS COIE LLP

# CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  January 6, 2023

                                        *s/ Jonathan G. Hardin*
                                      Jonathan G. Hardin
                                      PERKINS COIE LLP