# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | |
|---|---|
| CALUMET SHREVEPORT REFINING, LLC, et al.,<br><br>                Petitioner,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>               Respondent.<br>-------------------------------------------------- | Case No. 22-60266<br><br>Consolidated with: |
| WYNNEWOOD REFINING COMPANY, LLC, et al.,<br><br>                Petitioner,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>               Respondent.<br>-------------------------------------------------- | Case No. 22-60425 |
| ERGON REFINING, INC., et al.,<br><br>                Petitioner,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>               Respondent.<br>-------------------------------------------------- | Case No. 22-60433 |
| PLACID REFINING COMPANY LLC,<br><br>                Petitioner,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>               Respondent. | Case No. 22-60434 |

**PETITIONERS' JOINT RESPONSE IN OPPOSITION TO
MOTION OF RENEWABLE FUELS PRODUCERS TO
INTERVENE IN SUPPORT OF RESPONDENT EPA**

Petitioners Calumet Shreveport Refining LLC, The San Antonio Refinery LLC, Placid Refining Company LLC, Ergon Refining, Inc., Ergon-West Virginia, Inc., and Wynnewood Refining Company, LLC (together, "Petitioners") submit the following response in opposition to the Motion to Intervene filed by Renewable Fuels Association, Growth Energy, American Coalition for Ethanol, National Farmers Union, and National Corn Growers Association.

## ARGUMENT

Five industry groups representing ethanol producers ("Movants") belatedly seek to insert themselves into a controversy that does not implicate any of their legally protected interests. Their Motion should be denied for multiple, independent reasons.

First, the Motion comes far too late. Petitioners filed their petitions for review as early as May 3, 2022 (No. 22-60266) and August 2, 2022 (Nos. 22-60425, 22-60433, and 22-60434), each within 60 days of EPA's decisions under review. Federal Rule of Appellate Procedure 15(d) requires that any motion to intervene "must be filed within 30 days after the petition for review is filed." But Movants did not file their Motion within 30 days of those petitions for review. Instead, they waited many months, until Friday, February 17, 2023, less than three weeks before Petitioners filed their opening merits brief. Movants invoke this Court's

Rule 15.5, but they offer no plausible argument that their late Motion was "promptly" filed as required by that Rule. Movants had ample notice and opportunity to seek intervention far earlier but elected not to do so for their own reasons—changing course only after this Court granted a stay pending review finding that Petitioners are likely to succeed on the merits. The fact that Movants now regret their decision does not make the Motion prompt, especially given that Movants' eleventh-hour effort to intervene threatens to further delay the case schedule and exacerbate the ongoing harm EPA has inflicted on Petitioners through its unlawful decisions under review.

Second, Movants lack any legally cognizable interest that could justify injecting themselves into this action, in which Petitioners have challenged EPA's decisions to deny them a type of regulatory forbearance that is available to regulated parties under the Clean Air Act. Movants' purported interest is not based on any legal right; they claim only that, if the government grants the type of exemption that Congress permitted, then Movants will make less money. Even if that were true (and it is not), that type of attenuated economic interest cannot justify intervention.

Third, the Motion should be denied because Movants have failed to demonstrate that, if this Court vacates EPA's decisions denying Petitioners' applications for hardship exemptions, then the demand for ethanol from Movants' members will be affected in any way. The Motion is premised on Movants' bald assertion that, when EPA grants a "small refinery

exemption" ("SRE"), that somehow diminishes demand for ethanol and thereby harms Movants' economic interests. But Movants' claim is not just speculative—it is false twice over. It is wrong first because the 2017–2021 compliance years at issue are over, so demand for Movants' members' ethanol products in those past years will remain the same regardless of whether Petitioners receive hardship relief following vacatur and remand. And more generally, Movants have made no plausible showing that hardship relief decreases the demand for ethanol at all. Current federal regulations require EPA to increase the annual blending obligations of non-exempt parties to account for any small refinery hardship exemptions that the agency may grant, thereby *preventing* any decrease in the total volume of ethanol that is required to be blended under the Renewable Fuel Standard ("RFS").

Fourth, the Motion is "further flawed" because Movants "have made no showing that the federal government will not adequately represent their interests[.]" *State of Texas v. U.S. Dept. of Energy*, 754 F.2d 550, 553 (5th Cir. 1985). Movants' ultimate goal in this action is the same as EPA's—affirmance of EPA's Denials of small refinery hardship relief—and there is no adversity of interest, collusion, or nonfeasance that can rebut the presumption in this Circuit's caselaw in favor of the adequacy of the government's representation of Movants' purported interests.

Finally, Petitioners would be prejudiced by Movants' intervention, which could further delay these proceedings and thus subject Petitioners

to additional ongoing uncertainty regarding their RFS compliance obligations. The Court can prevent any prejudice while still allowing Movants to express their views in this matter by permitting their participation as *amici curiae*.

## I.    Movants' Have No Good Cause for their Untimely Motion.

The Court should deny the Motion because Movants filed far too late due to their own strategic miscalculation, and there is no good cause for excusing their lateness.

As Movants concede, motions to intervene "must be filed within 30 days after the petition for review is filed." Fed. R. App. P. 15(d). The petitions for review in this consolidated action were filed as early as May 3, 2022 (No. 22-60266) and August 2, 2022 (Nos. 22-60425, 22-60433, and 22-60434). The Motion to Intervene was filed 291 and 200 days later, respectively, on February 17, 2023. Nevertheless, Movants assert that their late Motion is timely under this Court's Rule 15.5 because it was filed more than 14 days before EPA's response brief is due. Movants are wrong.

Rule 15.5 provides that "[a] motion to intervene under Fed. R. App. P. 15(d) *should be filed promptly after the petition for review of the agency proceeding is filed*, but not later than 14 days prior to the due date of the brief of the party supported by the intervenor." (Emphasis added.) Contrary to Movants' assertion, Rule 15.5 does not mean any intervention motion is timely so long as it is filed at least 14 days before the brief of

the supported party. Rather, the phrase "not later than 14 days prior" provides an outer limit to the Court's discretion in determining whether "good cause" exists to excuse Movants' lateness. *See* Fed. R. App. P. 26(b) (allowing courts of appeals to extend time limits for "good cause"); *cf. United States v. Williams*, 56 F.4th 366, 370 (4th Cir. 2023) (explaining that Federal Rule of Civil Procedure 60's requirement that a motion must be filed "no more than a year after the entry of the judgment" sets an "outer limit of what may be timely," but a Rule 60 motion filed within the one-year period may still be untimely under the Rule's "reasonable time" requirement).

Here, there was nothing "prompt" about Movants' effort to intervene. Movants' attempts to establish good cause and characterize their Motion as "reasonably prompt[ ]" do not withstand scrutiny.

First, Movants claim good cause for their seriously late Motion because they drew a mistaken legal conclusion: they erroneously "concluded that the D.C. Circuit had exclusive jurisdiction over challenges to the April SRE Denial and June SRE Denial" until this Court "denied EPA's [ ] motion to stay the proceedings pending resolution of the D.C. Circuit case on November 29, 2022." Motion 9. But Movants offer no authority holding that a party's faulty jurisdictional analysis can justify belated intervention. *Cf. Solar Energy Indus. Ass'n v. FERC*, 59 F.4th 1287, 1295 (D.C. Cir. 2023) (upholding agency denial of intervention where movant's

"failure to timely intervene [was] the result of its own mistaken judgment").

In any event, this Court ordered on *October 21, 2022,* that the jurisdictional question would be "carried with the case." Order, No. 22-60266, Doc. 120. At that point, it was clear that this Court would hear the merits of the petitions for review. If Movants felt it was necessary to intervene to "to protect their" purported "interest in EPA's implementation of the RFS program," Motion 10, then they should have done so immediately at that time. Instead they waited 120 more days, filing their Motion only after the Court issued a stay order finding that Petitioners are likely to succeed on the merits. Order, No. 22-60266, Doc. 209. But in assessing the timeliness of the Motion, "the relevant starting point is 'not when [the movants] knew or should have known that [their] interests would be *adversely* affected but, instead, when [they] knew that [they] had *an interest* in the case.'" *St. Bernard Parish v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019) (quoting *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 (5th Cir. 2016) (emphasis added)); *see also Engra, Inc. v. Gabel*, 958 F.2d 643, 644-45 (5th Cir. 1992) (affirming denial of intervention where movant "knew of his interest in the case from its inception" yet waited more than eight months to move to intervene).

In contrast, Movants filed a motion to intervene in the D.C. Circuit on November 1, 2022. Motion to Intervene, No. 22-1073 (consol.) (D.C.

Cir. Nov. 1, 2022), Doc. 1971716.[1] They have offered no good reason why they did not file a similar motion in this Court at the same time. *See, e.g.*, *Save Our Springs Alliance, Inc. v. Babbitt*, 115 F.3d 346, 347-48 (5th Cir. 1997) (affirming denial of motion to intervene as untimely where movant delayed "nearly three months" until right "before initial briefs were due," and movant's "attempts to justify its delay [were] unpersuasive"); *In re Complaint of Malmac SDN BHD*, 1994 WL 57694, at *2 (5th Cir. 1994) (affirming denial of "eleventh-hour" intervention where movant "had known of its interest in the case for nearly seven months prior to its motion"). Simply put, Movants made an informed, strategic decision not to promptly intervene here. That they now regret that strategic choice does not make their months-late Motion "prompt" and does not establish "good cause" for their intentional delay.

Second, Movants will not be "deprived" of any "ability to protect their substantial interest" if their Motion is denied. Motion 10. Movants do not have any *legally* cognizable interest in these petitions for review, *see infra* Part II, and if Movants are not permitted to intervene as a result of their extreme lateness, then that is a consequence of their own legal

---

[1] The D.C. Circuit granted intervention but did not explain its decision. *See* Order, No. 22-1073 (consol.) (D.C. Cir. Feb. 22, 2023), Doc. 1987065. In the D.C. Circuit action, Movants argued that their motion was timely due to that court's extension of the deadline for procedural motions. *See* Motion to Intervene at 6, No. 22-1073 (consol.) (D.C. Cir. Nov. 1, 2022), Doc. 1971716. That argument is not available here.

strategy—not any deprivation by the Court. Whatever *pecuniary* interest Movants think they have in this action can be expressed through Movants' participation as *amici*. *See infra* Part VI.

Third, allowing Movants to intervene at the eleventh hour threatens to further delay these proceedings and prejudice Petitioners. This Court has granted stays pending review of two Petitioners' RFS compliance obligations, and a similar stay motion is currently pending from a third Petitioner. Order, No. 22-60266, Doc. 209; Motion, No. 22-60266, Doc. 223. The Court's stay Order temporarily protects those two Petitioners from irreparable harm that would result from government enforcement of RFS compliance during the pendency of this action. But the ongoing uncertainty arising from EPA's unlawful decisions under review has real-word impacts on all Petitioners' businesses. Movants' late intervention could require further extensions of the case schedule, prolonging that uncertainty and exacerbating the attendant harms. That prejudice is a further reason why no good cause justifies Movants' late Motion.

## II. Movants Have No Legally Protected Interest in this Action, and Even their Claimed Economic Interest is Unsupported.

To intervene in the petitions for review of EPA's April and June Denials, Movants must establish "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). That interest

must be "direct," "substantial," and "legally protectible." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984). As this Court has explained, "more than an economic interest is necessary. What is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *Id.*; *see also Trans Chemical Ltd. v. China Nat. Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 823 (5th Cir. 2003) (affirming denial of motion to intervene because, although shareholders "have an economic interest in [arbitration] award, [ ] this is not direct and substantial as required under Rule 24 and this Court's ruling in *New Orleans Public Service*").

Movants assert that they should be permitted to intervene because "[v]acatur of the April and June SRE Denials would disrupt the renewable fuel market, *adversely impacting the businesses and investments* that [Movant's] members have made in the biorefineries, feedstocks, and technologies used to produce renewable fuel." Motion 12 (emphasis added). In other words, Movants claim that if this Court vacates the SRE Denials and EPA subsequently grants hardship exemptions on remand, then Petitioners' RFS obligations will decrease, thereby diminishing market demand for Movants' products. *Id.* That theory offers no basis for intervention because it is purely economic, speculative, and wrong.

First, the Motion fails at the outset because it is based solely on an indirect economic theory of interest: the purported consequences of EPA's SRE decisions on the ultimate market for Movants' ethanol products.

That type of purely "economic interest" is insufficient under this Court's precedent. In *New Orleans Public Service*, city officials were not permitted to intervene in a contract dispute between a natural-gas utility and a company providing gas transmission because, although the proposed intervenors had an economic interest in the case's potential effect on local natural gas prices (including prices paid by the city), that was not a legally protectable interest for purposes of intervention. 732 F.2d at 464-70. This Court held "that an economic interest alone is insufficient, as a legally protectable interest is required . . . and such intervention is improper where the intervenor does not itself possess the only substantive legal right it seeks to assert in the action." *Id.* at 466; *cf. Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 566-69 (5th Cir. 2016) (in action challenging beverage permitting regime, *permit holders* held a legally protected interest and were allowed to intervene).

Here, Congress expressly provided hardship relief from RFS compliance for small refineries that can establish disproportionate economic hardship. *See* 42 U.S.C. § 7545(o)(9)(B). Movants have no legal right to see EPA deny the type of forbearance that Congress established merely to prop up demand (allegedly) for Movants' members' products, and Movants' property will not be directly impacted by vacatur of EPA's SRE Denials. For that reason alone, the Motion should be denied.

Second, even if purely economic interests were sufficient grounds to intervene, Movants' theory that their economic interest would suffer is

infirm. Movants have not made a plausible showing that, if EPA were to grant hardship relief to Petitioners after vacatur and remand, it will *actually* impact demand for Movants' members' ethanol products. According to Movants, when EPA grants small refinery hardship exemptions, it reduces demand for ethanol. Motion 11. But this action involves hardship petitions for *past* compliance years; all of the ethanol production and blending in those years has already occurred, and so the Court's decision in this action cannot possibly affect demand in past years.

Movants reply that, if Petitioners prevail in this action and then EPA on remand grants SREs for past compliance years, then "EPA would return [renewable fuel credits known as] RINs to the exempt refineries, reflecting their newly exempt volumes, … which could be used to meet future RFS obligations in place of physical volumes of renewable fuel, thereby suppressing the use of renewable fuel in that future year." Motion 11-12. That contention depends on a prediction about what relief EPA might provide upon remand, underscoring the speculative nature of the Motion. *See, e.g., Taylor Commc'ns Group, Inc. v. Southwestern Bell Telephone Co.*, 172 F.3d 385, 388 (5th Cir. 1999) (ruling that movant's asserted "interest in the underlying litigation is too speculative and general to support intervention"). Movants' argument also ignores the fact that multiple Petitioners' RFS compliance obligations have been stayed pending review, and therefore, they have not submitted RINs for compliance. If EPA grants hardship relief to Petitioners after vacatur and

remand, then, in many cases, there will be no previously submitted RINs for the agency to return.

In any event, the theory that underlies Movants' entire argument—that hardship exemptions depress overall market demand for ethanol, Motion 10-12—is false. Not only would EPA granting 2017–2021 hardship petitions after vacatur and remand have no impact on ethanol demand in *past* years, EPA has also enacted rules to ensure that small refinery hardship exemptions will not diminish the volume of ethanol blending in *future* years. Specifically, EPA promulgated regulations in February 2020 that *require* the agency to "increase" renewable fuel blending obligations of other *non-exempt* parties "to account for" the "exempted volumes" from SREs, thereby preventing hardship relief from lowering the overall volume of renewable fuel that must be blended in a given year. Renewable Fuel Standard Program: Standards for 2020 and Biomass-Based Diesel Volume for 2021 and Other Changes, 85 Fed. Reg. 7016, 7050 (Feb. 6, 2020) ("[T]he percentage standard for each category of renewable fuel would increase to account for a projection of the exempted volume. These higher percentage standards would have the effect of ensuring that the required volumes of renewable fuel are met when small refineries are granted exemptions[.]"). Movants' argument to the contrary relies on a decision that predates that rulemaking. *See* Motion 11 (citing *Am. Fuel & Petrochemical Mfrs. v. EPA*, 937 F.3d 559, 568, 571 (D.C. Cir. 2019)).

Movants fail to point to any actual evidence that small refinery hardship exemptions reduce demand for ethanol or otherwise negatively impact their members' ethanol production. *See infra*, Part III. That is not surprising, because no such evidence exists. To the contrary, small refinery hardship relief has *not* reduced the rate of ethanol production. As shown in the chart below, there has been no correlation—much less causation—between the number of hardship exemptions granted (which has varied considerably, as shown by the line) and ethanol production and blending (which has increased steadily, as shown by the bars).[2]



---

Because ethanol is the preferred, low-cost octane booster, small refineries blend as much of their fuel with ethanol as they can, regardless of whether they receive hardship relief. But most fuel produced by small refineries is sold and blended downstream by others, so exempting small refineries from RFS compliance does not reduce the amount of ethanol that will be blended; rather, it merely removes the small refinery's obligation to buy RINs for the volume of fuel they physically cannot blend themselves. Small Refiners Coalition Comments at 3.

For all these reasons, the Motion should be denied. *See Taylor Commc'ns Group*, 172 F.3d at 388; *New Orleans Pub. Serv.*, 732 F.2d at 464-66.

## III.    Movants' Declarations Are Inadequate to Support the Motion.

Setting aside the legal and analytical flaws in Movants' speculative theory of interest in this matter, *see supra* Part II, the Motion fails for the independent reason that the declarations on which it relies do not withstand scrutiny. *See, e.g.*, *Racing Enthusiasts & Suppliers Coal. v. EPA*, 45 F.4th 353, 359 (D.C. Cir. 2022) (petitioner lacked standing to challenge EPA order because, among other things, its conclusory declaration did not advance any evidence establishing how the challenged order harmed its interests).

The Motion relies on the Cooper, Jennings, and Skor Declarations to support the assertion that SREs drive down demand and prices for

ethanol, thereby harming Movants' businesses. *See* Motion 11-12 (citing Cooper Decl. ¶¶ 12, 15, 16; Jennings Decl. ¶ 13; Skor Decl. ¶¶ 15-16). The Motion also attaches the Larew Declaration but does not cite it in connection with this argument. *See id.* Regardless, none of the declarations provides a basis for granting the Motion. The declarants purport to explain the workings of complicated and dynamic markets for renewable fuels and RINs through nothing but their own conclusory say so, without any supporting evidence.

For instance, the Cooper Declaration asserts the declarant's "understanding," without any independent support, that previous SRE grants have "caused lower revenues for [Renewable Fuels Association] ethanol producer members." Cooper Decl. ¶ 14; *see also id.* ¶¶ 12-13, 15-17 (asserting without independent support that SREs diminish demand for renewable fuel). But Mr. Cooper does not explain how he is capable of arriving at this alleged causal conclusion and does not attribute it to any objective evidence. *See id.* In fact, the only purported evidence in the declaration is a citation to an article that does not even mention small refinery hardship exemptions. *See id.* ¶ 15 n.2.

The Jennings and Skor Declarations, which contain no citations to any evidence, likewise assert that hardship relief reduces demand for ethanol and harms the renewable fuel industry. But these claims are supported by nothing but the declarants' own say so. *See* Jennings Decl. ¶¶ 12-15; Skor Decl. ¶¶ 15-16. These declarants further suggest that, if

EPA granted SREs for past compliance years, it would somehow diminish the amount of renewable fuel blended for those years. *See* Jennings Decl. ¶ 12-13; Skor Decl. ¶ 15-16. But they make no attempt to engage with the reality of time: Those years are over; no more (or less) fuel can be blended in the past. *See also supra* Part II.

Similarly, the Larew Declaration cites no evidence concerning the relationship between SREs and the demand for renewable fuels, but nevertheless avers that *if* Petitioners succeed, and *if* EPA grants hardship relief after remand, it would reduce demand for renewable fuel and result in lower prices for Movants' products. Larew Decl. ¶¶ 11-13. Mr. Larew even asserts that if EPA granted 2019–2021 SREs, it would "reduce demand for renewable fuel" for *those years. Id.* at ¶ 11. As noted above, that assertion is nonsensical given that demand in *past* years cannot change. *See supra* Part II.

Movants' declarants offer nothing more than conclusory assertions insisting that SREs decrease demand for renewable fuel. The declarants' *ipse dixit* and speculation are not adequate evidence to substantiate such assertions of harm, and Movants therefore cannot establish grounds to intervene in these cases. *See Racing Enthusiasts*, 45 F.4th at 359. For this additional reason, the Motion should be denied.

## IV.  Movants Fail to Establish that EPA Will Not Adequately Represent their Interest.

The Motion is "further flawed" because, even if Movants had a "legally protectable interest," they "have made no showing that the federal government will not adequately represent their interests on appeal." *State of Texas*, 754 F.2d at 553. When "the existing representative in the suit is the government, there is a presumption of adequate representation which may be overcome by the intervenor only upon a showing of adversity of interest, the representative's collusion with the opposing party, or nonfeasance by the representative." *Id.*; *see also Guenther v. BP Ret. Accumulation Plan,* 50 F.4th 536, 543 (5th Cir. 2022) (to "overcome this presumption" when "would-be intervenor has the same ultimate objective as a party to the lawsuit," the "movant must establish adversity of interest, collusion, or nonfeasance on the part of the existing party" (quotation omitted)); *Staley v. Harris Cnty. Tex.*, 160 F. App'x 410, 413 (5th Cir. 2005) (reasoning that government is "presumed to adequately represent another party with identical ultimate goals" and holding that denial of intervention is proper because "[i]f the County prevails in its claim … [movant] will be completely satisfied").

Here, Movants and EPA share the same goal in this action—they seek affirmance of EPA's Denials of Petitioners' applications for small refinery hardship exemptions for the 2017–2021 compliance years. That goal would "be completely satisfied" if EPA were to prevail in this action.

*Staley*, 160 F. App'x at 413. And Movants have not shown any adversity of interest, collusion, or nonfeasance that could rebut the presumption in favor of the adequacy of EPA's representation of Movants' purported interests. *See id.*; *State of Texas*, 754 F.2d at 553. For this additional reason, the Motion should be denied.

## V.   Movants Have Waived Any Argument for Permissive Intervention, Which Would Be Improper in Any Event.

In a footnote, without any argument or analysis, Movants contend that they "also satisfy the standard" for permissive intervention under Federal Rule of Civil Procedure 24(b). Motion 8 n.3. That perfunctory assertion, made only in a footnote, is waived. *White Glove Staffing, Inc. v. Methodist Hosps. of Dallas*, 947 F.3d 301, 308 (5th Cir. 2020) ("Arguments subordinated in a footnote are insufficiently addressed in the body of the brief, and thus are waived." (quotation omitted)).

Even if it were not waived, Movants cannot participate by permissive intervention. "In exercising its discretion" whether to allow permissive intervention under Rule 24(b), the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Here, Movants' "eleventh-hour intervention[ ]" would prejudice Petitioners by threatening to further delay these proceedings, subjecting Petitioners to ongoing uncertainty regarding their RFS compliance obligations. *Malmac*, 1994 WL

57694, at *2; *see supra* Part I. Movants' perfunctory request for permissive intervention should be denied.

## VI. Petitioners Do Not Object to Movants' Participation as Amici.

Movants assert that they should be permitted to intervene so they "can provide this Court with information concerning the renewable fuels industry that may assist the Court in understanding the issues in this litigation and assessing the practical implications of its decisions." Motion 15. Any such information can be provided to the Court by Movants as *amici*, which does not require their intervention. *See* Fed. R. App. P. 29. If the Court denies the Motion to Intervene and Movants wish to participate as *amici*, then Petitioners will not oppose such participation so long as it would not materially delay the schedule in this action. *See, e.g.*, *State of Tex.*, 754 F.2d at 553 (denying motion to intervene but granting "leave to proceed as amicus curiae").

## CONCLUSION

For the foregoing reasons, this Court should deny the Motion to Intervene.

Dated: March 13, 2023              Respectfully submitted,

*s/ Jonathan G. Hardin*
Jonathan G. Hardin
Alexandra M. Bromer
Michael R. Huston
Sopen Shah
Karl J. Worsham
PERKINS COIE LLP
700 Thirteenth Street, N.W.,
Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6297
Facsimile: 202.654.6211
JHardin@perkinscoie.com
ABromer@perkinscoie.com
MHuston@perkinscoie.com
SShah@perkinscoie.com
KWorsham@perkinscoie.com

*Attorneys for Calumet Shreveport*
*Refining, LLC, The San Antonio*
*Refinery, LLC, Ergon Refining, Inc.,*
*Ergon-West Virginia, Inc., and*
*Placid Refining Company LLC*

Gregory J. Morical
CALUMET SPECIALTY
PRODUCTS PARTNERS, LP
2780 Waterfront Parkway, E. Drive
Indianapolis, IN  46214
Telephone:  317-957-5276
greg.morical@calumetspecialty.com

*Attorney for Calumet Shreveport*
*Refining, LLC*

21

_s/ Samuel P. Hershey_
Samuel P. Hershey
Thomas E Lauria
Andrew K. Gershenfeld
WHITE & CASE LLP
1221 Ave. of the Americas
New York, NY 10020
Telephone: (212) 819-2699
Facsimile: (305) 371-2700
sam.hershey@whitecase.com
tlauria@whitecase.com
agershenfeld@whitecase.com

_Attorneys for Petitioner Wynnewood_
_Refining Company, LLC_

# CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,376 words, excluding the parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used for the word count).

Dated: March 13, 2023

*s/ Jonathan G. Hardin*
Jonathan G. Hardin
PERKINS COIE LLP

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: March 13, 2023

_s/ Jonathan G. Hardin_
Jonathan G. Hardin
PERKINS COIE LLP